Argued 10 January, decided 6 February, 1906.

### NEIS *v.* WHITAKER.

84 Pac. 699.

Plea of Express Rescission of Contract — Surplusage.

1. An answer to a claim of damages for the breach of a contract of sale, stating that the parties mutually agreed "that said contract set out in the complaint should be annulled, rescinded and held for naught, and that a new and different contract should cover all the subject-matter" of the original contract "wherein and whereby the plaintiffs and defendants agreed," etc., states an express rescission of the first contract, and is a plea in bar to a recovery thereon. Further matter concerning the subsequent dealings between the parties as to part of the subject matter of the contracts is mere surplusage.

Trial — Evidence as to Surplusage or Redundant Matter.

2. Surplusage in a pleading, or redundant matter, should be disregarded at the trial and evidence in support thereof should usually be rejected, unless it may be competent sometimes to rebut claims of the adversary. The general rule is, once redundant, always so.

Trial — Effect of Inconsistent Instructions.

3. The giving to a jury of conflicting instructions on a given point constitutes reversible error, even though one instruction may have been correct.

For example: In an action on a contract, the defense being a rescission and the execution a new agreement, it is error to give one instruction on the theory of an express rescission by agreement and another on the theory of an implied rescission, as the two theories are directly conflicting.

From Benton : James W. Hamilton, Judge.

Statement by Mr. Justice Moore.

This is an action by Kola Neis, as administrator of the partnership estate of Faber & Neis, against John Whitaker and Frank Whitaker, to recover damages for an alleged breach of an agreement. The complaint state

that November 21, 1901, the defendants entered into a written contract with Faber & Neis, whereby they stipulated annually, from 1902 to 1906, inclusive, to cultivate a hopyard in Benton County, and on or before the 15th day of October of such years to deliver to the latter, at Corvallis, 20,000 pounds of merchantable hops, properly baled, for which they were to be paid 10 cents per pound, and were to receive as advances on account thereof the sums of $200 and $1,000 respectively, on the 1st day of April and of September of such years, the remainder of the purchase price to be paid when the hops were delivered ; that Faber died January 21, 1904, and 12 days thereafter Neis was duly appointed and immediately qualified as administrator of the partnership estate ; that in 1904 the defendants raised 20,000 pounds of merchantable hops, and pursuant to the terms of the contract Neis, as such administrator, advanced to them the sums agreed upon at the times specified, and October 17, 1904, demanded of the defendants the delivery of that quantity of hops which were baled and in store at Corvallis, tendering the remainder of the purchase price, but they refused to comply therewith, whereby plaintiff, as such administrator, sustained damage in the sum of $5,419, the recovery of which is demanded.

The answer denies the material allegations of the complaint, and, for a separate defense, states :

"That on or about the 20th day of February, 1903, the said plaintiffs, Neis & Faber, and these defendants by mutual agreement agreed that the said contract of November 21, 1901, set out in the complaint herein, should be annulled, rescinded and held for naught, and that a new and different contract should cover all and singular of the subject-matter of the hops to be produced on the said farm or yard mentioned in the complaint herein, wherein and whereby the said plaintiffs agreed to pay, and these defendants agreed to accept payment, for all hops grown on said yard during the year 1903 to the extent of 20,000

pounds, or such less amount as might be produced thereon of good merchantable hops at the rate of 12 cents per pound in the City of Corvallis, Oregon, the same to be baled in good condition, and the plaintiffs further agreed at said time that, in addition to the said 12 cents net per pound for the said hops to be grown as aforesaid, they would well and truly pay to the defendants a per cent better in the event that the market price of the hops in the year 1903 was 15 cents per pound or more ; that pursuant thereto the said plaintiff paid to these defendants for all the hops grown by them during the said year 1903, to wit, 17,951 pounds, the sum of 12 cents per pound net therefor and refused to pay any further, other, or greater per cent on the market price of said hops than $50, the market price of hops at the date of said payment, to wit, September 25, 1903, being 23 cents per pound or thereabouts."

For another defense it is alleged, in effect, that in February, 1904, the parties attempted to make another contract for the sale and delivery of hops to be grown that year, and that relying upon such agreement, the terms of which had been assented to, the defendants accepted certain advances made to them on account thereof, but, plaintiff having refused to sign such contract, they tendered to him the money so received and interest thereon, which sums he refused to accept, whereupon they deposited the same with the clerk of the court for him. The reply specifically denied each allegation of new matter in the answer, and averred that no note or memorandum expressing the consideration or terms of the alleged modified agreement was ever made or subscribed by the plaintiff or by any person authorized so to do by him. The cause having been tried, judgment was rendered for the costs and disbursements of the action against the plaintiff, and he appeals.                    REVERSED.

For appellant there was a brief over the names of *Weatherford & Wyatt, W. M. Kaiser* and *W. T. Slater*, with oral

arguments by *Mr. James Knox Weatherford* and *Mr. Woodson Taylor Slater.*

For respondents there was a brief over the names of *W. S. McFadden* and *W. E. Yates*, with an orgal agument by *Mr. McFadden.*

MR. JUSTICE MOORE delivered the opinion of the court.

1. It is contended by plaintiff's counsel that the allegations of new matter in the answer, as hereinbefore quoted, constitute an averment of a rescission by implication, limited in its application to the year 1903, and that, as the original contract was severable in respect to each of the five years of the specified term, the annulment alleged left such contract in force and effect in 1904, when the cause of action stated in the complaint accrued, and, this being so, the court erred in admitting testimony over plaintiff's objection and exception. An examination of the language used in the affirmative defense, to which attention is called, will show an intent to plead an agreement of the parties in the following particulars, to wit : (1) That the contract of November 21, 1901, "should be annulled, rescinded, and held for naught"; and (2) that a new and different contract "should cover all and singular of the subject-matter of the hops to be produced." If the answer had stated that the original contract had been rescinded by the making of a new agreement, such supposed abrogation would probably be by implication only, for the use of the preposition "by," indicating that the revocation was secured in a particular manner, in the case assumed, would show that the annulment resulted from the conduct of the parties, and not in pursuance of their stipulation to that effect. The agreement of February, 1903, as alleged in the answer, states a meeting of the minds of the parties in respect to the cancellation of the contract of November 21, 1901, and to the making

of a new agreement for future production and delivery of hops. The use of the word "and," connecting the independent sentences quoted, manifests an intention to plead the separate propositions embodied in the agreement of February, 1903, thus showing that the language used in the first affirmative defense constitutes an averment of an express rescission. The annulling of the contract having been thus distinctly alleged, the averment thereof constituted a plea in bar of plaintiff's recovery, and, this being so, no necessity existed for stating in the answer the making of a "new and different contract" in respect to the growth, sale or delivery of hops in the year 1903. The terms of such agreement and the performance thereof by the parties, as alleged in the answer, were probably averred to explain the defendants' delivery to Faber & Neis of the hops grown in the year 1903, notwithstanding the cancellation of the original contract.

2. No motion was made to strike out the averments of the making of a new contract relating to the future production, sale or delivery of hops, but plaintiff specifically denied such allegations in the reply, and testimony having been admitted, over his objection and exception, tending to show what the defendants did pursuant to the terms of the new agreement, it remains to be seen whether or not such testimony should have been excluded, notwithstanding the issue on that subject. If irrelevant or redundant matter be inserted in a pleading, it may be stricken out on motion of the adverse party: B. & C. Comp. § 86. "Unnecessary matter," says Mr. Bliss, in his work on Code Pleading (3 ed.), § 215, "is called 'redundant' when there is an effort to reform the pleadings by striking it out. It is called 'surplusage' when there has been no such effort, in which case it should be disregarded by the court, as if the pleading did not contain it." See, also, Boone, Code Plead. § 249. The editors of the Ency-

clopedia of Pleading and Practice (volume 21, p. 256), in speaking of surplusage, say: "In most code states irrelevant or redundant matter goes for nothing at the trial, whether controverted or disregarded in pleading." In *Specht* v. *Spangenberg*, 70 Iowa, 488 (30 N. W. 875), Mr. Chief Justice Adams, speaking upon this subject, says: "An averment irrelevant when made does not become relevant by being denied." If the parties to this action agreed to annul the original contract as alleged in the answer, such fact, if established, constituted a bar to plaintiff's recovery, and hence the making of a new agreement relating to the hops to be produced in 1903 had no bearing on the question in dispute, did not affect the subject-matter of the controversy, and could in no way assist the decision of the court, but probably tended to confuse and prejudice the jury. The issue being immaterial, the testimony so objected to should have been rejected (20 Enc. Pl. & Pr. 108), unless it was offered to repel plaintiff's contention that the defendants' delivery of the hops grown in 1903 evidenced their recognition of the validity and continuity of the original contract. It does not appear whether or not this testimony was offered for a purpose that would render it admissible, but in view of a new trial, to which we think the plaintiff is entitled on another feature of the case, the discussion of this question has been deemed advisable.

3. The court, referring to the defense interposed, in charging the jury, said:

"This answer is in substance that the parties made a new agreement whereby they annulled and set aside this alleged contract entered into in 1901, and that this agreement was substituted instead of that, and that the other was to be, by the terms of this agreement, no longer in force."

In alluding to the original contract, the jury were charged as follows:

"If you find from the evidence * * that the parties * * agreed * * that the old contract was to be no longer of any effect, that the terms were changed, I instruct you that it was within the power of the parties to change that contract, and, if they did, then plaintiff could not bring an action upon the contract of 1901."

The court, adverting to the agreement of February, 1903, also gave the following instruction:

"But if the parties agreed upon a different contract and it was understood that it was to be in lieu of, and to annul, the old one, and they executed the contract by delivery of the hops for that year, and plaintiff received the hops with that understanding, that would be a complete defense to this cause of action.".

Exceptions were taken by plaintiff's counsel to the language thus used, on the ground that though Faber & Neis in 1903 donated to the defendants two cents a pound for their hops more than specified therefor, and also gave them, in addition thereto, the sum of $50, such benefactions did not even modify the original contract.

An examination of the parts of the charge hereinbefore quoted will show that the court seems to place the bar to plaintiff's recovery upon an implied rescission of the contract of November 21, 1901, by the making of a new agreement, whereby the terms of the original contract were changed, which agreement was adopted in lieu of and to annul the old contract. In the brief of defendants' counsel the following statement is made: "There is nothing in this cause of any implied rescission of the contract of November 21, 1901, as contended by the appellants." This assertion seems to be warranted by an examination of certain parts of the court's charge, which we do not deem necessary to set out, wherein the jury were told, in effect, that the rescission was secured by an express stipulation

of the parties; the court having told the jury, in the parts of the charge hereinbefore quoted, that, if they found that the parties had made a new agreement in lieu of and to annul the old contract, the plaintiff could not recover in this action. It will thus be observed that the rescission is treated by the court as having been secured by express stipulation of the parties to that effect, and also brought about by implication, resulting from the making of a new agreement, when the answer directly states that the annulling of the contract was based on the former ground, thus showing that the instructions are inconsistent. The giving of inconsistent and conflicting instructions is erroneous, when it is impossible to say which rule the jury adopted in rendering their verdict, and such error is not cured though the law may have been correctly stated in another part of the charge: *Morrison* v. *McAtee*, 23 Or. 530 (32 Pac. 400).

For the error committed in the giving of such instructions, the judgment is reversed, and a new trial ordered.

REVERSED.

<br>

Decided 27 February, 1906.