Argued January 9, affirmed August 13, 1952

# WILLIAMS ET AL. *v.*
# PORTLAND GENERAL ELECTRIC CO.

247 P. 2d 494

598

*Clarence J. Young* argued the cause for respondents. With him on the brief were Oglesby H. Young and Koerner, Young, McColloch & Dezendorf, all of Portland.

*Norman L. Easley,* of Portland, argued the cause for appellant. With him on the brief were Griffith, Phillips & Coughlin, of Portland.

Before Brand, Chief Justice, and Rossman, Lusk, Latourette and Tooze, Justices.

ROSSMAN, J.

This is an appeal by Portland General Electric Company, sole defendant, from an order of the circuit court which, after vacating a judgment entered by that court July 3, 1950, in favor of the defendant, ordered a new trial of the action. The order was made upon motion of the plaintiffs. The latter are Catherine Williams and Bruce Williams, widow and minor son, respectively, of one Ernest W. Williams, who was injured fatally June 7, 1949, while in the discharge of his duties as an employee of the defendant-appellant. The minor son appeared by guardian ad litem. The action which led to the entry of the challenged order was instituted to recover damages for the death upon charges that the defendant, in conducting the work in which the deceased was employed, failed to comply with the requirements of the Employers' Liability Act (§§ 102-1601 to and including 102-1606, OCLA) and that as a proximate result thereof Williams lost his life. Trial resulted in a verdict and judgment for the defendant.

The motion for a new trial was predicated in large part upon the instructions which were given to the jury.

The deceased was in the defendant's employ as an apprentice lineman and was electrocuted while working upon one of the defendant's power poles. Evidence indicated that at the time of the fatality the deceased was engaged in cutting a wire composed of many strands with a bolt clipper which the defendant had furnished for that purpose. The bolt clipper, which was somewhat like a large pair of shears, was so made that when the handles were pressed together the blades could cut in two a wire a half inch or so in diameter. At the point of the angle which formed when the blades were opened there was a round notch about a quarter of an inch across. According to the evidence, the defendant furnished the bolt clippers to its linemen as suitable for cutting wires. The complaint's charge that the cause of the death was the defendant's purported failure to have complied with the Employers Liability Act was segregated into eight specifications, one of which is the following:

"In providing decedent with defective bolt clippers ·in that the same were notched in the angle formed by the cutting blades, thus making it possible for the blades to be snagged by uncut strands of wire."

Evidence indicated that while Williams was cutting the wire an uncut strand became lodged in the notch of the clipper and presently the dangling end of the wire came into contact with a charged wire, thereby causing Williams to be electrocuted.

Both parties agree that the work which was under way at the time of the fatality was governed by the Employers' Liability Act. Referring to that statute, the defendant's brief says:

"The Company admitted the applicability of the act on the pleadings, but denied negligence. * * *

What is known in the law as 'common law' or 'ordinary negligence' was not in the case.''

The jury was instructed:

"I instruct you that the defendant Portland General Electric Company at the time and place of this accident was subject to the duties imposed upon it by the Oregon Employers' Liability Act, and Ernest W. Williams was entitled to the protection of said act.''

After the death, the defendant made an alteration to its bolt clippers which consisted of fastening to the outer sides of the blades, at the place where the notch appeared, a small piece of steel which covers the notch and is intended to prevent a wire which is about to be cut from entering it. The pieces of metal can possible be termed guards. The plaintiffs claim that the alteration enhances the safety of the clippers and that the misfortune would not have occurred if the change had been made before June 7, 1949. They also claim that the very fact that the alteration was made is evidence showing that it was practical, prior to the fatality, to have rendered the clippers more safe.

The motion for a new trial was based in part upon a claim that error was committed when the jury was instructed:

"You are instructed that if you find under the evidence in this case that the defendant made a change in the bolt cutters in use at the time of the accident, such change is not to be considered by you as any evidence that the defendant was negligent. Such change may be considered by you in relation to the issue that the defendant failed to use every practicable care, caution and device.''

Section 102-1601, OCLA, provides:

"* * * all owners, * * * having charge of, or responsible for, any work involving a risk or dan-

ger to the employees * * *, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, * * *.''

According to the plaintiffs, the change which the defendant made in the bolt clipper after the fatality was evidence of antecedent negligence.

Other instructions told the jury:

"As a general rule, negligence means the failure to exercise ordinary care. It is a failure to exercise that degree of care and diligence that an ordinarily prudent person would exercise in his own affairs under like or similar circumstances."

As we have seen, the parties are agreed that the case was governed, not by the common-law standards of due care, but by the Employers' Liability Act, and it will be recalled that the defendant's brief says tersely: "What is known in the law as 'common law' or 'ordinary negligence' was not in the case." After the instructions had employed the above-quoted definition of negligence, they continued:

"In a case which is governed by the provisions of the Oregon Employers' Liability Act, the defendant is held to a different and higher standard of conduct for the care and protection of persons entitled to the benefits and protection of that act."

The instructions then related to the jury the pertinent safety requirements of the act, and added:

"A failure to comply with the requirements of the Oregon Employers' Liability Act with respect to any person entitled to its protection is negligence per se, that is, negligence in and of itself—negligence as a matter of law."

■■ Generally, evidence which shows that following

an injury which the plaintiff alleges was tortiously inflicted, repairs or improvements were made to the instrumentality that caused the injury, or that precautions were inaugurated to prevent similar mishaps, is inadmissible to prove antecedent negligence: *Erickson's Dairy Products Co. v. Northwest Baker Ice Machine Co.*, 165 Or 553, 109 P2d 53; *Foster v. University Lumber Co.*, 65 Or 46, 131 P 736; and *Love v. Chambers Lumber Co.*, 64 Or 129, 129 P 492. However, in order to succeed in this case, it was necessary for the plaintiffs to establish an element which is not a part of ordinary negligence cases. It will be recalled that they averred that the bolt clippers were so fashioned that it was "possible for the blades to be snagged by uncut strands of wire" and that they claimed that it was practical to have overcome that purported defect. The "and generally" clause of § 102-1601, OCLA, as we have seen, requires employers to use "every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the * * * apparatus or device, * * *." Therefore, in cases which are based upon that clause, the plaintiff must present evidence showing that the instrumentality [in this case the small guards] which he claims should have been employed was practical and would not have impeded "the efficiency of the * * * apparatus or device". Proof which shows that subsequent to the mishap (1) the employer began the use of the instrumentality which the plaintiff alleges would have rendered the work more safe; (2) experience has shown that the change was practical as a safety measure; and (3) use of the instrumentality has not hampered efficiency, is admissible evidence of antecedent negligence: *Malloy v. Marshall-Wells Hardware Co.*, 90 Or 303, 173 P 267,

175 P 659, 176 P 589, and *Love v. Chambers Lumber Co.*, supra.

From the foregoing it is evident that if the "device, care and precaution" which the plaintiffs contend the employer should have employed was not practical as a safety measure, or if it would have impeded "the efficiency of the structure, machine or other apparatus or devices", the "and generally" clause of § 102-1601 authorizes no recovery. But if (1) the "device, care and precaution", which was omitted and which the plaintiffs aver should have been taken, was practical as a safety measure, and (2) it would not have lessened efficiency, the "and generally" clause authorizes a recovery; assuming, of course, that proximate cause is properly established.

Stating the rule in the terms of this case, it was the defendant's duty to have installed upon the bolt clippers, prior to the fatal injury of Williams, the guards which it later placed upon them; provided the guards were practical as safety devices and incapable of interfering with the efficiency of the clippers. Therefore, evidence which showed that the recently installed guards (1) had proven to be practical as safety devices, and (2) had not lessened the efficiency of the clippers, had a tendency to establish the defendant's duty and its violation thereof. Obviously, evidence which proves duty and the disregard thereof proves negligence. The latter is nothing more than the omission of duty, or, stated otherwise, the failure to exercise the care which the circumstances justly demand.

When the contested instruction employed the terms "such change" and "a change in the bolt cutters", we infer from the arguments employed in the briefs that it referred to the element of practicalness which we have been considering.

It is our belief that whenever instructions encompass within the accordian word "negligence" an alleged violation of the "and generally" clause, proof showing that after an injury the employer made a change in the alleged tortious instrumentality and that subsequent experience has shown that the change (1) is a practical safety measure and (2) does not detract from efficiency, is evidence of negligence. For those reasons we think that the instruction challenged by the plaintiffs is subject to the criticism submitted by them and that it was erroneous. It is better, we believe, for instructions given in cases brought under the "and generally" clause to state directly that if a subsequently employed change has proven to be practical as a safety measure and has not hampered efficiency, it may be considered as evidence showing that the employer had not complied with the demands of the clause.

We shall now consider another claim of error advanced by the plaintiffs in support of the challenged order which granted a new trial.

The motion for a new trial, in referring to the instructions which had been given to the jury, contended in part as follows:

"The court erred in repeating to the jury the word 'negligent' six times and the word 'negligence' ten times, or a total of sixteen times without any qualifying words to indicate that the gravamen of the charge was failure of defendant to use every device, care and precaution under the conditions specified in the Oregon Employers' Liability Act."

As we have said, the instructions related to the jury the meaning of the term "negligence" and the requirement that all persons must exercise the degree of care that "an ordinary prudent person would exercise * * * under like or similar circumstances." Those explana-

tions were succeeded shortly by a portrayal of the requirements of the Employers' Liability Act which included a statement that the defendant was subject to the duties imposed by the act. The jury was told:

> "Failure, if any, on the part of the defendant Portland General Electric Company to comply with the requirements of the Oregon Employers' Liability Act in one or more of the respects alleged in the complaint which resulted proximately in the death of Ernest W. Williams would constitute negligence in itself."

The instructions included the sentence previously quoted which employed the terms "negligence per se, that is, negligence in and of itself". Going on, they mentioned other provisions of the act, such as the one which renders the duties imposed by it nondelegable and deems the foreman or person in charge of the operations as the agent of the employer. As a part of those instructions, the court referred to the basic safety code of this state and told the jury that "a failure to comply with the rules prescribed in this code is negligence as a matter of law." After the instructions had enumerated, one by one, the specific charges made by the plaintiffs against the defendant, they said:

> "If you find from the evidence that it was practicable for defendant Portland General Electric Company to have used or taken one or more of the devices or precautions as specified by plaintiffs to protect its employees, including Ernest W. Williams, without impairing the efficiency of the operations, then any failure to do so which resulted proximately in the death of Ernest W. Williams would entitle plaintiffs to recover a verdict against defendant Portland General Electric Company."

Following the above, the jury was instructed in the rules governing the award of damages. Those instruc-

tions, as transcribed, constitute more than two type-written pages of the record. After they had been given, the court returned to the subject of negligence and it was at that juncture that the instructions used, as the motion for a new trial says, "the word 'negligent' six times and the word 'negligence' ten times, or a total of sixteen times." Those paragraphs did not employ the name Employers' Liability Act except in the following instance:

> "You are instructed that even though the Employers Liability Act of the State of Oregon applies to the facts of this case as a matter of law, nevertheless you must find negligence upon the part of the defendant as alleged in plaintiffs' amended complaint and submitted to you under these instructions and that such negligence, if any, was a proximate cause of the accident before plaintiffs can recover in this case."

In awarding a new trial, the trial judge prepared a memorandum opinion which, in addition to carefully analyzing the instructions, displayed a commendable willingness to admit self-error. It found that the instructions "were incomplete, inconsistent and misleading." Based upon that conclusion, the new trial was ordered. We quote further from the memorandum opinion:

> "* * * And the court gave instructions sua sponte as follows: 'If you find that the defendant was negligent, and that such negligence was not the proximate cause of the death of Ernest W. Williams, your verdict will be in favor of defendant,' and, again, 'If you find the defendant was not negligent, of course your verdict would be in favor of the defendant.' Thus, emphasis was placed upon the issue of negligence and in none of the instances referred to was this issue related to the Employers Liability

Act. The previous giving of plaintiffs' requests, wherein the distinction was made, was not followed through in the giving of defendant's requests or in the instruction given by the court. The court fell into the error of treating the case as one of ordinary negligence rather than one under the Act, and it is probable the jury so regarded it and lost sight of the greater liability imposed by the Act. Plaintiffs' requests were first given, then defendant's, then the court's. The reference to the Act in plaintiffs' requests was minimized in the impact of the court's repeated reference to negligence and the treatment of the case as one involving ordinary negligence. The reference to negligence should in each instance have been related to the Employers Liability Act, failing which the instructions were incomplete, inconsistent and misleading. Particularly objectionable was the court's volunteered instruction which in effect ruled the Act out and submitted the case solely on the theory of negligence. The jury was told that if no negligence was found then their verdict should be in favor of the defendant, without considering liability under the Act to use every device, etc. Ordinary negligence was not the test but, rather, compliance with the Act.''

It is true, as the defendant argues, that if instructions include a definition of a technical term it need not be repeated every time the term is reemployed in the instructions. That rule, which is one of good sense, must yield to the very purpose for which instructions are given to juries; that is, to enlighten them and to give to them in clear, understandable, unambiguous language the legal principles which will guide them in their deliberations. We do not believe that it necessarily follows that the jury understood the instructions merely because they were given a definition of the word "negligence". The following, taken from the defendant's reply brief, shows the reasoning in which one would

have to engage in order to believe that the jury was not misled:

> "Counsel for respondents and the trial court himself are so familiar with the distinction drawn between ordinary negligence and negligence within the meaning of the Employers' Liability Act that they both make the mistake of assuming that the jury was aware of the distinction. Their reasoning is that when the term 'negligence' was used in presenting appellant's theory of the case, the jury must have applied 'ordinary' negligence to the facts in reaching its verdict, otherwise plaintiffs would have recovered. They make the assumption even though the definition of ordinary negligence is not before the jury for its consideration."

We disagree with the part of the statement just quoted which says: "even though the definition of ordinary negligence is not before the jury for its consideration." In preparing that statement, counsel either overlooked the instructions' definition of the term "negligence" or erroneously inferred that the definition had been withdrawn.

The part of the instructions which gave to the jury the substantive law governing the issue of liability was divided into two sections which, unfortunately, were separated from each other by many paragraphs which delineated the rules governing the award of damages. The first of the two sections spoke in part of the Employers' Liability Act, and wherever it employed the term "negligence" it expanded the significance of the term by embodying in it the requirements of the act. The second section made frequent use of the words "negligence" and "negligent" but only once referred to the Employers' Liability Act. In that single instance, as we have seen, the instructions stated that "even though the Employers' Liability Act * * * applies to the facts of this case as a matter of law,

nevertheless you must find negligence upon the part of the defendant * * * before plaintiffs can recover." We think that the able trial judge correctly pronounced the instructions "inconsistent and misleading." He was in a better position than we are to discern the effect upon the jury of the instructions which he gave.

Misleading and inconsistent instructions are frequently deemed ground for new trials or reversals: *Erven v. Eagy,* 152 Or 219, 53 P2d 53; *Seipp v. Howells,* 146 Or 637, 31 P2d 188; *Smith v. Laflar,* 143 Or 65, 20 P2d 391; *Houston v. Maunula,* 121 Or 552, 255 P 477; *Stanfield v. Fletcher,* 114 Or 531, 236 P 258; *Neis v. Whitaker,* 47 Or 517, 84 P 699. In this case, the misleading and inconsistent instructions of which we have taken note clearly warranted the entry of the attacked order.

 The parties to any jury case are entitled to have the jury instructed in the law which governs the case in plain, clear, simple language. The objective of the mold, framework and language of the instructions should be to enlighten and to acquaint the jury with the applicable law. Everything which is reasonably capable of confusing or misleading the jury should be avoided. Instructions which mislead or confuse are ground for a reversal or a new trial.

The trial judge, in entering his challenged order, said:

"The evidence clearly supported most, if not all, of the charges of negligence made in the complaint. Plaintiff's testimony was adduced largely through defendant's employees as adverse witnesses, so defendant offered no other evidence. It may be said the evidence greatly preponderated to show liability in many respects."

For the reasons above stated, the challenged order of the circuit court is affirmed.