Argued and submitted August 9, 2019, reversed and remanded October 21, 2020

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## ANGEL ISAIAH MORALES,
*Defendant-Appellant.*

Multnomah County Circuit Court
17CR65059; A167147

476 P3d 965

At the customer service desk of a WinCo, defendant told his mother that he had been hit by a car in the parking lot. She called 9-1-1 and reported the incident. The police came and questioned defendant and the driver of the car, then, upon concluding that defendant had lied about being hit, arrested defendant for initiating a false report, ORS 162.375(1). At defendant's trial, the court instructed the jury that "[p]ersons can act in concert to initiate a false report." The jury returned a verdict of guilty. On appeal, defendant assigns error to that instruction. He argues that, under these circumstances, it was incorrect and misleading such that the jury could have based its verdict on legally erroneous grounds. *Held*: The trial court erred in issuing the "in concert" instruction, because that instruction misleadingly suggested that the jury could find defendant guilty even if he did not engage in conduct that marked the beginning of a false report to law enforcement. That error was not harmless, in part because the state argued that defendant initiated the false report by telling his mother (rather than law enforcement) that he had been hit. *See State v. Branch*, 362 Or 351, 408 P3d 1035 (2018).

Reversed and remanded.

Leslie M. Roberts, Judge.

Kyle Krohn, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

David B. Thompson, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, and Powers, Judge, and Kistler, Senior Judge.

LAGESEN, P. J.

Reversed and remanded.

**LAGESEN, P. J.**

At the customer service desk of a WinCo, defendant told his mother, Santiago, that he had been hit by a car in the parking lot. Santiago called 9-1-1 and reported the incident. The police came and questioned defendant and the driver of the car, then, upon concluding that defendant had lied about being hit, arrested defendant for initiating a false report, ORS 162.375(1). At defendant's trial, the court instructed, among other things, that "[p]ersons can act in concert to initiate a false report." The jury returned a verdict of guilty. On appeal, defendant assigns error to that instruction. He argues that, under these circumstances, it was incorrect and misleading such that the jury could have based its verdict on legally erroneous grounds. The state argues in response that the jury instruction issue is unpreserved and unreviewable. We conclude that defendant's claim on appeal is preserved, that the instruction was erroneous, and that the erroneous instruction was not harmless. We therefore reverse and remand.

Defendant and his family parked in a WinCo parking lot, and Santiago went inside the store. A short time later, defendant and his younger brother headed toward the store and, while in the crosswalk leading to the front of the store, got into a confrontation with a driver, Tate. Defendant accused Tate of hitting him with her car, and Tate denied hitting him. Tate parked her car and entered the store.

Defendant entered the store and found Santiago, who was at the customer service desk. He told Santiago that he had been hit by Tate's car in the parking lot. A WinCo employee at the customer service desk overheard and suggested that Santiago call the police. Heeding that suggestion, Santiago called 9-1-1 and relayed defendant's description of what had happened in the parking lot. Defendant remained nearby for all or much of the phone call, then went outside to wait for the police.

Officer Wingfield arrived on the scene and asked defendant if he was injured. Defendant responded that he was not injured but that the car had hit him, according to

Wingfield, on his upper thigh.[1] Defendant asked Wingfield to "do something" about the incident, and Wingfield agreed to investigate. After Wingfield observed that the fender and bumper on Tate's car, which was still parked in the parking lot, were situated much lower to the ground than defendant's upper thigh, however, he became concerned that defendant was lying about being hit. He asked defendant, "Is it possible you overstated what happened?" Defendant answered, "No, I got hit, and I want you to help me on this."

Tate came out of the store and identified herself as the driver but denied hitting defendant. After speaking with Tate, Wingfield warned defendant that initiating a false report could result in a criminal investigation against him. Defendant was adamant that Tate had hit him. Meanwhile, a different police officer was in the store watching security footage of the confrontation in the parking lot, so Wingfield agreed to wait with defendant for the officer to finish watching the tape. A few minutes later, Wingfield spoke with the other officer about the security footage, then returned to defendant and again asked him to "be honest" about the incident. Defendant maintained that Tate had hit him. According to Wingfield, he offered to watch the video with defendant and Santiago, but they declined and began to leave.[2] Wingfield then arrested defendant for initiating a false report.

Defendant was charged by information with initiating a false report, ORS 162.375.[3] He exercised his right to a jury trial, and, at trial, the parties disputed how the jury should be instructed on the charge. The state requested that the jury be instructed as follows, adding the italicized wording (which it derived from our decision in *State v. Velasquez*,

---

[1] At trial, defendant testified that he was hit lower—on his leg above his knee.

[2] At trial, Santiago testified that she had asked to watch the security video but that she was not allowed to see it.

[3] ORS 162.375(1) provides:

"A person commits the crime of initiating a false report if the person knowingly initiates a false alarm or report that is transmitted to a fire department, law enforcement agency or other organization that deals with emergencies involving danger to life or property."

286 Or App 400, 400 P3d 1018 (2017)) to the uniform instruc-
tion on the elements of initiating a false report:

> "A person commits the crime of or the offense of ini-
> tiating a false report if the person initiates or sets going
> a report to a law enforcement agency, knowing that such
> information is false. *Persons can act in concert to initiate a
> false report*."

(Emphasis added.)

The trial court initially was hesitant to grant the
state's request, indicating that it was concerned that the "in
concert" instruction could be misleading. It explained, "I
don't mind instructing the jury that that is—that they can
act together to initiate. But it's more than just being involved
somehow in a false report. I think that's—I think that could
be misleading to the jury." Defendant informed the court
that he too thought that the "in concert" instruction was
misleading. To remedy the issue, he proposed adding other
instructions designed to "counterweigh and balance out"
the state's "in concert" instruction, should the court elect
to deliver it, suggesting two specific possible instructions in
the course of discussions.

Ultimately, despite its initial misgivings, the court
sided with the state over defendant's objection. It included
the "in concert" instruction and declined to qualify it with
either of defendant's suggested clarifying instructions.

During the state's closing argument, after describ-
ing defendant's confrontation with Tate, the state contended
that defendant's conduct, alone or when taken together with
his mother's act of calling 9-1-1, constituted initiating a false
report:

> "[C]riminal conduct is what happened next.
>
> "[Defendant] went inside, went and found his mom at
> the WinCo. He told her what he said happened. And based
> upon that information, she called 911. He was there when
> she called 911. You heard during the 911 phone call she's
> talking to him, giving him instructions not to move.
>
> "* * * * *
>
> "So, based upon this 911 call, officers were dispatched.
> Officer Wingfield testified that he was the first one on the

scene. Defendant was outside waiting for him. He was waiting for him, called him over. 'Hey, I'm the one you're looking—I'm the one. I was the one hit by the car.' Officer Wingfield said, 'Do you want to file a report? Do you want us to investigate?' And the defendant said, 'Yes. Yes. I was hit by this car, I was hit intentionally. Yes, I want to file a report.' That's why we're here today. *These are the facts that show that the defendant initiated a false report that day*[.]"

(Emphasis added.)

The instructions to the jury included the "in concert" wording. The jury returned a verdict of guilty.

Defendant appeals. He assigns error to the trial court's instruction that "[p]ersons can act in concert to initiate a false report." Much as he did below, defendant argues that that instruction was incomplete and inaccurate, and that it could have permitted the jury to reach a legally erroneous result.[4] Defendant points out that the instruction, as taken from *Velasquez*, omits from the "in concert" wording the other qualifying words in that opinion—"in concert *and simultaneously*."[5] 286 Or App at 405 (emphasis added). The state contends that defendant's argument is unpreserved and unreviewable because defendant did not point out below that the instruction omitted "simultaneously."

We begin by addressing the state's contention that defendant's argument is unpreserved. Under ORAP 5.45(1), to preserve an issue for appellate review, a party typically

---

[4] Defendant argues separately that "courts should avoid giving instructions that quote the exact words of an appellate opinion, because many opinions are not written with the intent of being adapted into jury instructions." We reject defendant's argument to the extent that it suggests that there is a *per se* ban on using appellate opinions to inform jury instructions. But we note that this case illustrates the risk of using wording from opinions as jury instructions and, in particular, the risk of crafting a jury instruction from statements in a case intended to describe why particular evidence was sufficient. *See Rogers v. Meridian Park Hospital*, 307 Or 612, 616, 772 P2d 929 (1989) ("[B]ecause many appellate opinions are written with no view that they will be turned into instructions, care must be exercised in using the language of these opinions for instructions to juries.").

[5] The trial court and parties discussed the source of the "in concert" instruction, our decision in *Velasquez*, 286 Or App at 405. The sentence on which they focused reads, "We agree that when, as here, the evidence shows that two persons acted in concert and simultaneously made a false report to a police officer, each could commit the crime of initiating a false report." *Id*.

must offer "an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately." *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000). "The primary purposes of the preservation rule are to allow the trial court to consider a contention and correct any error, to allow the opposing party an opportunity to respond to a contention, and to foster a full development of the record." *State v. Laune*, 303 Or App 541, 547, 464 P3d 459 (2020) (citing *Peeples v. Lampert*, 345 Or 209, 219-20, 191 P3d 637 (2008)).

Reviewing the trial court record below, we conclude that defendant's assignment of error is preserved. His assignment of error is that the court should not have included the "in concert" wording in its instructions to the jury because that wording was incorrect under the law and misleading. Below, defendant and the court (and the state) discussed how the "in concert" instruction "could be misleading to the jury." Defendant therefore offered, at two separate points in the discussion, clarifying instructions designed to "balance out" the state's proposed instruction: one clarifying that defendant's conduct needed to be "proactive rather than reactive" to support a conviction for initiating a false report, and the other clarifying that merely lying in response to police questioning could not support such a conviction. *See State v. Vanornum*, 354 Or 614, 632 n 11, 317 P3d 889 (2013) ("[T]he terms of a requested, but refused, instruction may sometimes go a long way to putting a trial court on notice of the deficiency in the trial court's instructions if the requested instruction is not given."). More importantly, when the court indicated that it intended to include the state's proposed instruction, defendant objected. He argued that the instruction was "not an accurate statement of the law, because it mischaracterizes the holding of *Velasquez*." Defendant elaborated:

"In *Velasquez* the initiation of the report was the conversation that the defendant and another person had *together* with a police officer.

"* * * And I believe the facts are inapposite to our situation here. Because the initiation of the report in this matter was done *singularly* by Ms. Santiago."

(Emphases added.) And he argued, among other things, that the proposed instruction could allow the jury to convict defendant even if he did not actively participate during the initiation of the report—an issue that defendant renews on appeal. That issue is plainly preserved.

In arguing that defendant's assignment of error is not preserved, the state focuses on the fact that defendant's argument on appeal centers largely on the theory that the challenged instruction was misleading because it omitted the word "simultaneously." Although defendant's appellate argument unquestionably rests on that point, and that is a point that defendant did not make below, the state's argument overlooks the fact that that particular point, about the omission of the word "simultaneously," is just one argument in support of defendant's position—both below and on appeal—that the instruction delivered is misleading.[6] Because defendant clearly raised the *issue* of the misleading quality of the instruction below, that issue is preserved. *See Schultz v. Franke*, 273 Or App 584, 587, 359 P3d 487, *rev den*, 358 Or 527 (2015) (explaining that there are "distinctions between raising an *issue* at trial, identifying a *source* for a claimed position, and making a particular *argument.* * * * The first ordinarily is essential, the second less so, the third least" (quoting *State v. Hitz*, 307 Or 183, 188, 766 P2d 373 (1988)) (emphases and omission in *Schultz*; internal quotation marks omitted)).

That leaves the question whether the trial court's instruction was misleading. We review for legal error whether a trial court erred in instructing the jury. *State v. Barnes*, 329 Or 327, 333, 986 P2d 1160 (1999). One circumstance in which instructional error exists is where the instructions communicate to the jury an inaccurate legal rule to apply to the facts. *State v. Bistrika*, 261 Or App 710, 728, 322 P3d 583, *rev den*, 356 Or 397 (2014), *cert den*, ___

---

[6] In his brief on appeal, defendant also argues more generally that the instruction is misleading:

"The instruction permitted the jury [to] reach a legally erroneous result. Based on the instruction, the jury could have found defendant guilty not because his statements to police initiated a false report, but because his mother's 9-1-1 call combined with his statements—*after* the call—collectively initiated a false report."

US ___, 136 S Ct 32 (2015). "A trial court commits reversible error when it incorrectly instructs the jury on a material element of a claim or defense and that instructional error, in light of the other instructions given, permits the jury to reach a legally erroneous result." *Id.* at 727-28.

Under ORS 162.375(1), "[a] person commits the crime of initiating a false report if the person knowingly initiates a false alarm or report that is transmitted to a *** law enforcement agency." As the Supreme Court explained in *State v. Branch*, for purposes of that statute:

> "[A] person 'initiates a false alarm or report' if the person's communication 'begin[s]' or 'mark[s] the beginning of' informing the organization about the circumstances that are the subject of the report. In the context of questioning initiated by law enforcement, that suggested meaning includes, at a minimum, falsely reporting new circumstances to which the law enforcement agency is reasonably likely to respond as a separate, ongoing crime or emergency. Conversely, the text and context suggest that a person does not violate ORS 162.375 during law enforcement questioning by falsely confirming or denying knowledge of a report or alarm that already is under investigation[.]"

362 Or 351, 362, 408 P3d 1035 (2018) (second and third brackets in original).

In view of the explanation in *Branch* of the type of conduct necessary to support a conviction under ORS 162.375(1), the trial court's instruction that "[p]ersons can act in concert to initiate a false report" was misleading. That is because the instruction suggested to the jury that it could find defendant guilty even if, as required under *Branch*, defendant did not knowingly engage in conduct that "mark[ed] the beginning" of a false report to law enforcement, based on defendant's conduct of telling his mother (who was not law enforcement herself) about the alleged collision, and his later conduct in responding to the police questioning triggered by his mother's 9-1-1 call. Said another way, the instruction, by suggesting to the jury that it could rely on the conduct of another to convict defendant without elaborating further on how, precisely, another's behavior could be taken into account, created the risk that the jury would find defendant guilty without finding that he, himself, engaged in the

conduct proscribed by the statute with the requisite mental state.[7] Because the instruction was misleading, the trial court erred in delivering it. *See Estate of Michelle Schwarz v. Philip Morris Inc.*, 348 Or 442, 454, 235 P3d 668, *adh'd to on recons*, 349 Or 521, 246 P3d 479 (2010) ("Everything which is reasonably capable of confusing or misleading the jury should be avoided. Instructions which mislead or confuse are ground for a reversal or a new trial.").

That error was not harmless. In reviewing whether an instructional error was harmless, we take into account "the contentions of the parties at trial." *Bistrika*, 261 Or App at 728-30; *State v. Payne*, 366 Or 588, 609, 468 P3d 445 (2020) (to determine whether instructional error is harmless, the court considers the instructions as a whole, taking into account how the parties' theories of the case were developed through the evidence and arguments at trial). Here, the state's theory in closing argument relied heavily on the notion that defendant could act with another to initiate a false report. It argued that defendant initiated the report by (1) telling Santiago that he had been hit, (2) being near her while she called 9-1-1, (3) identifying himself as the victim when Wingfield arrived on the scene, and (4) asking Wingfield to investigate. That line of argument, coupled with the "in concert" instruction, allowed the jury to find defendant guilty of initiating a false report simply by finding either that he told his mother about the alleged collision, causing her to call 9-1-1, or by finding, alternatively, that he maintained his story when responding to police questioning after his mother initiated the report to 9-1-1 (or both). Under *Branch*, neither one of those findings, on its own, could have supported a lawful conviction. There is, therefore, some likelihood that the trial court's instruction permitted the jury to reach a legally erroneous result. Accordingly, on this record, "[w]e cannot conclude that there is little likelihood that the error affected the verdict." *Payne*, 366 Or at 611.

Reversed and remanded.

---

[7] We note that the state has never contended that defendant could be convicted under an accomplice theory of liability.