Submitted October 4, 2022, affirmed April 26, petition for review allowed
September 14, 2023 (371 Or 333)
See later issue Oregon Reports

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MATTHEW RYAN WILTSE,
*Defendant-Appellant.*

Curry County Circuit Court
20CR28544; A175287

529 P3d 288

Defendant appeals from a judgment convicting him of third-degree assault, ORS 163.165. In a single assignment of error, defendant contends that the trial court committed plain error when it gave the state's special instruction on what constitutes a "protracted disfigurement" for the purpose of proving the "serious physical injury" element of that offense. Specifically, defendant contends that the court impermissibly commented on the evidence in violation of ORCP 59 E when it instructed the jury that "[a] scar on the scalp visible five months after the injury qualifies as protracted disfigurement." *Held*: The Court of Appeals concluded that the trial court's instruction was an impermissible comment on the evidence, but that defendant had failed to establish that the alleged error was "plain." The court explained that the error was not apparent on the face of the record, because the discussion of how the court came to instruct the jury was not recorded, and the state presented a plausible strategic reason for defense counsel not to have objected.

Affirmed.

Cynthia Lynnae Beaman, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Stacy M. Du Clos, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Michael A. Casper, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

MOONEY, J.

Affirmed.

**MOONEY, J.**

Defendant appeals from a judgment convicting him of third-degree assault, ORS 163.165. In a single assignment of error, defendant contends that the trial court committed plain error when it gave the state's special instruction on what constitutes a "protracted disfigurement" for purposes of proving the "serious physical injury" element of that offense. Specifically, defendant contends that the court impermissibly commented on the evidence in violation of ORCP 59 E when it instructed the jury: "A scar on the scalp visible five months after the injury qualifies as protracted disfigurement." As explained below, we conclude that defendant has failed to establish that the alleged error is "plain." The discussion of how the court came to instruct the jury was not recorded, and the state has presented a plausible strategic reason for defense counsel not to have objected. Under those circumstances, the error is not apparent on the face of the record and, therefore, the court did not plainly err. Affirmed.

The following facts are undisputed. In May 2020, during a verbal altercation between the defendant and the victim, the defendant struck the victim on the side of her face with a long metal pole and broke multiple bones in the victim's face. Soon after the incident, the victim was taken by ambulance to an emergency room.

Defendant was charged by indictment on several counts, including third-degree assault under ORS 163.165(1).[1] Under that provision, a person commits third-degree assault if, as relevant here, the person recklessly causes a "serious physical injury" by means of a dangerous or deadly weapon. ORS 163.165(1)(a).

Defendant's trial took place approximately six months later, in November 2020. At trial, the victim, who is five feet two inches tall, testified that she had picked

---

[1] A grand jury indicted defendant on first-degree assault, ORS 163.195 (Count 1); second-degree assault, ORS 163.175 (Count 2); third-degree assault, ORS 163.165 (Count 3); and possession of methamphetamine, ORS 475.894 (Count 4). Defendant entered a guilty plea on Count 4, possession of methamphetamine. A jury found defendant not guilty on Count 1, and guilty on Count 3. The trial court dismissed Count 2 at the state's request.

up a metal pole and approached defendant to get him to stop laughing at her but only wanted to intimidate him. She denied any intention to strike defendant. When she approached defendant with the pole, she saw that defendant had a knife in his hand and "froze." The next thing she remembered was being hit by defendant with the pole and waking up on the ground with "blood everywhere" and in a lot of pain.

The emergency room physician who treated the victim, Dr. Peipmeier, testified that multiple bones in her eye socket were broken, and there was a cut on the side of her face approximately two centimeters in length that was "fairly deep." The cut required seven stiches on the outer layer, with additional stitches on the inside layer. Peipmeier testified that the victim's injury was "life-threatening" and explained, "If the injury wasn't treated, the [victim] could have died, which is why I activated the trauma crew and immediately took her back to have a CT of the head to rule out impending death."

The victim also testified that as a result of the incident, she was on a liquid diet for almost a month because the pain in her jaw prevented her from eating. At the time of the trial, she still experienced pain when it rained and had trouble turning her neck while driving. The state presented testimony and a photograph showing that, at the time of trial, she still had a scar on the side of her face.

During defendant's presentation of evidence, he testified that the victim had been menacing him with the pole, and that he had inadvertently injured her when he "yanked it out of her hands."

After the presentation of evidence, each party submitted proposed jury instructions. The trial court called counsel for the parties into chambers where they discussed the jury instructions. Specifically, the trial court asked the attorneys to "come back in the back for just a moment" so that they could "go over the jury instructions" "off the record."

When the trial resumed, the court instructed the jury on the law that it was to apply during its deliberations,

including the elements of the various charged offenses. As relevant here, the court instructed the jury that to prove that defendant had committed third-degree assault, the state was required to prove beyond reasonable doubt that defendant "recklessly caused serious physical injury to [the victim] by means of a * * * dangerous weapon." In addition, the court instructed the jury that the term "serious physical injury" means:

> "[a] physical injury that, one, creates a substantial risk of death; two, causes serious and protracted disfigurement; three, causes protracted impairment of health; or, four, causes protracted loss or impairment of the function of any bodily organ."

At the state's request, the trial court also instructed the jury that,

> "A scar on the scalp visible five months after the injury qualifies as protracted disfigurement."

It is this latter instruction, specially requested by the state, that is at issue here and the focus of our opinion.

The parties then presented closing arguments. With respect to the third-degree assault charge, the state argued that the jury should find that the victim had suffered a "serious physical injury" for any of the following three reasons. First, Peipmeier testified that the victim's injury was "life-threatening." Second, the victim's injury qualified as a "serious protracted impairment" of her health based on evidence that she could not eat solid food for a month and still had pain in the side of her face at the time of trial. Third, the state argued that the victim suffered "serious and protracted disfigurement" by directing the jurors' attention to the instructions that they had been given and emphasizing the state's specially requested instruction to drive its point home:

> "If you go to the top of the next page, protracted disfigurement, a scar on the scalp visible—visible five months after the injury qualifies as protracted disfigurement. So we have a scar that's visible on her scalp, on her face six months later, so that would count as protracted disfigurement. For you to decide, is it serious and protracted disfigurement?

The State submits to you that this injury is serious and protracted disfigurement for her."

Defendant did not address the seriousness of the victim's injuries in closing. Instead, defense counsel argued that the state had failed to prove that defendant had acted with a culpable mental state and to disprove his claim that he had been acting in self-defense. Noting that the victim had approached defendant with the pole in her hand, counsel argued that defendant had acted "reasonably in this situation."

As noted, after being instructed and hearing closing arguments, the jury found defendant guilty of third-degree assault and acquitted defendant of first-degree assault. The court dismissed the second-degree assault charges.

On appeal, defendant contends that the court plainly erred in instructing the jury on the "serious physical injury" element of third-degree assault. Specifically, defendant argues that instructing the jury that "[a] scar on the scalp visible five months after the injury qualifies as protracted disfigurement" was plain error, because it impermissibly commented on the evidence by informing the jury on what inference it was required to draw from the scar on the side of the victim's face. Relying on *State v. Maciel-Cortes*, 231 Or App 302, 308-09, 218 P3d 900 (2009), defendant argues that the instruction directly informed the jury how certain evidence related to whether the victim's injury was protracted and whether it constituted disfigurement. In that case, we held that the court's jury instruction that, "[d]riving under the influence of intoxicants is, itself, evidence that a person created a substantial risk of physical injury to passengers," was improper comment on the evidence. *Id.* at 308-09.

Further, defendant asserts that the improper instruction was not harmless, because it allowed the jury to find defendant guilty of third-degree assault without independently finding that the victim's injury qualified as a "protracted disfigurement." *See State v. Ramoz*, 367 Or 670, 704-05, 483 P3d 615 (2021) (concluding that an instructional error is not harmless when the error "probably created an erroneous impression of the law in the minds of the jury and

if that erroneous impression may have affected the outcome of the case" (internal quotation marks omitted)). Defendant also argues that when a jury instruction misstates a theory of criminal liability, the test for harm is simply "whether the jury's guilty verdict on one or more of the charges could have been based on the theory of criminal responsibility contained in the erroneous instruction." *State v. Lopez-Minjares*, 350 Or 576, 585, 260 P3d 439 (2011). Defendant acknowledges that he did not preserve those arguments but requests that we conduct plain-error review and exercise our discretion to correct the error. *See, e.g.*, *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013) (describing the plain-error doctrine).

In response, the state contends that defendant's argument fails for several reasons. First the state argues that the trial court did not plainly err. Rather, the state contends that the trial court correctly instructed the jury about the meaning of "serious physical injury," because it is a restatement of the holding in *State v. Alvarez*, in which the court concluded that "a scar on the scalp visible five months after the injury qualifies as protracted disfigurement." 240 Or App 167, 171, 246 P3d 26 (2010), *rev den*, 350 Or 408 (2011). Second, the state contends that any error is not plain, because the parties' discussion with the trial court regarding the jury instructions is not in the record, and there is no way to know what position defendant took as to that instruction. The state argues that it is possible that defendant agreed to the instruction, given that it directly quoted the holding in *Alvarez*. The state also argues that it is possible that defendant chose not to object for strategic reasons.[2] Relying on *State v. Gornick*, 340 Or 160, 130 P3d 780 (2006), the state contends that the error is not plain in this case because the record is subject to competing inferences, and one available inference from the record is that defendant chose not to raise the issue. *See id.* 169-70 (concluding that the claimed error was not one that appeared on the face of the record under ORAP 5.45(1), because the court "would be forced to choose between competing inferences").

_____

[2] Defendant did not address that issue in his appellate brief when discussing whether the error was plain. Rather, in defendant's discussion under the "preservation of error" section, defendant argued, as a basis to exercise our discretion to correct the error, that there was no conceivable reason for defendant's failure to object.

In light of the evidence in the case, the state contends that it was a losing argument for defendant to suggest that the victim's injuries were not sufficiently protracted and disfiguring to qualify as a "serious physical injury." Next, the state points to the fact that defendant did not argue that the element of "serious physical injury" had not been proven. Rather, defendant's theory of the case was that he lacked the mental culpability for the state to prove any of the charges and that he acted in self-defense. In that context, agreeing to the challenged instruction would be a reasonable strategy, because it would limit the extent to which the jury would need to focus its attention on the nature and scope of the injuries.

In any event, the state argues that even if the error was plain, there are several reasons that we should not exercise our discretion to correct any error. First, this is not the type of "rare and exceptional case[ ]," *Gornick*, 340 Or at 166, in which plain-error review would be warranted, because it is inferable that defendant made a strategic decision not to object, and defendant failed to make a record of the discussion regarding jury instructions. Second, according to the state, even if defendant's silence was not strategic, there is little likelihood that the error affected the verdict given the undisputed evidence establishing the element of "serious physical injury" based upon two other theories. Specifically, there was undisputed evidence that the injury "created a substantial risk of death" and that it had caused the victim "protracted impairment of health."

Furthermore, even if the record does not definitively establish that an unpreserved error was harmless, the state notes that we are not required to exercise our discretion to address that error under ORAP 5.45; *see State v. Inman*, 275 Or App 920, 936, 366 P3d 721 (2015), *rev den*, 359 Or 525 (2016) (explaining that "the harmless-error analysis does not govern [the court's] discretionary decision about whether to address unpreserved claims of error" and that we "must [instead] balance the gravity of [the] error, in the context of the 'nature of the case,' against the other [pertinent] factors"). Here, the state argues that the gravity of the error is diminished when the record does not affirmatively

show that the error likely changed the outcome. *See State v. Derschon*, 206 Or App 574, 581, 138 P3d 30, *rev den*, 341 Or 392 (2006) (declining to correct error in admitting evidence when the state presented "ample evidence of defendant's guilt over and above the [challenged] evidence").

We begin with defendant's assertion that the trial court's instruction was an impermissible comment on the evidence. Under ORCP 59 E, applicable to criminal cases under ORS 136.330, a trial court may not instruct the jury "with respect to matters of fact, nor comment thereon." A trial court impermissibly comments on the evidence "when it gives a jury instruction that tells the jury how specific evidence relates to a particular legal issue." *State v. Hayward*, 327 Or 397, 410-11, 963 P2d 667 (1998). Instructing the jury to draw an inference against the defendant in a way that shifts the burden of proof from the state to the defendant also constitutes an impermissible comment on the evidence. *Id.* at 411. "An inference cannot relieve the state of its burden of proving each element of the crime beyond a reasonable doubt." *Id.* An instruction may permissibly draw the jury's attention to a particular fact and state that it relates to a particular element. *See State v. Blanchard*, 165 Or App 127, 130, 131, 995 P2d 1200, *rev den*, 331 Or 429 (2000) (explaining that an instruction that is neutral regarding the inference it may draw from particular evidence is permissible). But the instruction may not direct the jury to draw any particular inference from a given factual finding, let alone instruct the jury that such evidence is dispositive of the element. *See State v. Newcomer*, 265 Or App 706, 711, 337 P3d 137 (2014) (explaining that the court's instruction was an improper comment on the evidence because it "required the jury to make an inference that substituted for the jury's finding of the required culpable mental state").

In reviewing whether a defendant was prejudiced by a court's erroneous instruction, we consider "the instructions as a whole and in the context of the evidence and record at trial, including the parties' theories of the case with respect to the various charges and defenses at issue." *State v. Payne*, 366 Or 588, 609, 468 P3d 445 (2020) (internal quotation marks and citations omitted).

Here, the state charged defendant with third-degree assault, ORS 163.165(1)(a). As charged, the state was required to prove that defendant caused the victim "serious physical injury" by use of a dangerous weapon. Below, the trial court correctly instructed the jury on the statutory definition of "serious physical injury": "physical injury which creates a substantial risk of death or which causes serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ." ORS 161.015(8). In addition, the court gave the state's special instruction that was taken from our holding in *Alvarez*: "[A] scar on the scalp, visible five months after the injury, qualifies as 'protracted disfigurement.'" 240 Or App at 171.

In this case, the state's requested special instruction on "protracted disfigurement" recited evidence that the court in *Alvarez* found to be sufficient to overcome a motion for a judgment of acquittal. However, *Alvarez* was not about how to properly instruct a jury on "protracted disfigurement." As we have explained before, there is a "risk of using wording from opinions as jury instructions and, in particular, [in] crafting a jury instruction from statements in a case intended to describe why particular evidence was sufficient." *State v. Morales*, 307 Or App 280, 285 n 4, 476 P3d 965 (2020) (citing *Rogers v. Meridian Park Hospital*, 307 Or 612, 616, 772 P2d 929 (1989)); *see Rogers*, 307 Or at 616 ("[B]ecause many appellate opinions are written with no view that they will be turned into instructions, care must be exercised in using the language of these opinions for instructions to juries.").

When the trial court instructed the jury that, "[a] scar on the scalp visible five months after the injury qualifies as protracted disfigurement," it impermissibly drew the jury's attention to the scar and the inference of protracted disfigurement, essentially disposing of the state's burden to prove the serious physical injury element. In other words, it commented on the evidence. That it correctly read a line from the holding in *Alvarez* does not turn the instruction into something other than a comment on the evidence and it does not make the comment proper. The court did not

neutrally inform the jury on what factors it could consider in determining whether an injury caused "disfigurement" or whether that disfigurement was "protracted." Rather, it directly informed the jury how certain evidence related to two factual issues—that is, whether the injury was protracted and whether it constituted disfigurement.

In this case, the scar was located on the victim's face near her eye and not on her scalp. Nonetheless, the jury likely thought that the court's instruction was informing them that the scar in this case constituted protracted disfigurement. Therefore, we conclude that the court's instruction, impermissibly directed the jury on the inference to be drawn. *See State v. Stewart*, 316 Or App 450, 454, 502 P3d 241 (2021) (explaining that "it remains a question for the factfinder in each individual case whether under the specific circumstances pleaded and proved a defendant subjects another to offensive physical contact" (internal quotation marks and citation omitted)).

Despite the court's erroneous instruction, the parties disagree as to whether the court's error qualified for plain-error review. To constitute error, an alleged error must appear "on the record," which means that "the reviewing court must not need to go outside the record to identify the error or choose between competing inferences, and the facts constituting the error must be irrefutable." *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991). As noted earlier, that requirement is not met if one inference is that the litigant chose not to object. *Gornick*, 340 Or at 169-70. However, under plain-error analysis, competing inferences "do not arise automatically, but must be plausible." *See State v. Belen*, 277 Or App 47, 53, 369 P3d 438 (2016) (internal quotation marks and citations omitted).

Here, a conclusion that the trial court erred by instructing the jury that "[a] scar on the scalp visible five months after the injury qualifies as protracted disfigurement" would require us to resolve competing inferences regarding what the parties discussed, and what agreement they may have reached, during the off-the-record discussions that led the trial court to instruct the jury without any objection from defendant. Given defendant's self-defense

theory and the evidence in the case, we agree with the state that it is plausible that defendant might have chosen not to object as a strategic decision, or that defendant agreed to the instruction or that defendant agreed that the instruction was a correct statement of the law. However, the transcript does not establish what transpired during those unrecorded discussions, and we cannot entertain a claim of plain error that requires us to speculate about what the parties might have discussed while off the record. *See State v. Cook*, 267 Or App 776, 780, 341 P3d 848 (2014) (concluding that an error that required speculation as to what the parties accomplished while off the record precluded plain-error review); *see also State v. Harbick*, 234 Or App 699, 705, 228 P3d 727, *rev den*, 349 Or 171 (2010) (explaining that the appellant had not demonstrated that the trial court committed plain error by considering a guilty-except-for-insanity defense, because given the evidence of off-the-record proceedings in that particular case, "[i]t is at least possible that, following the competency hearing, the parties discussed that very issue off the record").

Accordingly, although the trial court's instruction was an impermissible comment on the evidence, the court did not plainly err in giving that instruction.

Affirmed.