Argued and submitted April 11, affirmed June 29, 2011

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

HERMINIO MARTINEZ-SANCHEZ,
*Defendant-Appellant.*

Marion County Circuit Court
08C51261; A142136

260 P3d 599

Larry R. Roloff argued the cause and filed the brief for appellant.

Judy C. Lucas, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Rosenblum, Senior Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

Following a jury trial, defendant was convicted of three counts of first-degree rape, ORS 163.375, and two counts of first-degree sexual abuse, ORS 163.427. He appeals from those convictions, raising numerous assignments of error. We reject all but one of those assignments without discussion, writing only to address his contention that the trial court erred in admitting, in the absence of supporting physical evidence, evidence of a medical expert's diagnosis of sexual abuse. *See State v. Southard*, 347 Or 127, 218 P3d 104 (2009). Because we conclude that this is not a case in which we ought to exercise our discretion to correct any error in admitting the evidence, we affirm.

Although defendant concedes that he did not challenge admission of the diagnosis before the trial court, he asserts that admission of the evidence is error apparent on the face of the record and that we should exercise our discretion to correct the error. Assuming that admission of the evidence was plain error under the circumstances presented in this case, *see State v. Clay*, 235 Or App 26, 30, 230 P3d 72 (2010) (following *Southard*, trial court's admission of expert diagnosis of child sexual abuse in the absence of physical evidence constitutes plain error), we agree with the state that we should not affirmatively exercise our discretion to correct the error. *See Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991).

According to the state, defendant's conduct at trial brought about any error in admitting the diagnosis. Specifically, the state points to the fact that it did not offer evidence of the diagnosis on direct examination of the expert and, in fact, the prosecutor had indicated that the state did not expect to have that expert discuss a diagnosis. However, on cross-examination, defendant asked the expert questions about whether children ever fabricate accounts of sexual abuse and also asked, "If you determine in the context of an assessment that a child is lying, do you report that?" In response to that question, the expert stated:

> "We don't make a determination about whether or not a child is lying per se. The medical examiner will make a diagnosis and there's three possible diagnoses: Abuse—and

actually there's levels of abuse. So child sexual abuse highly—highly probable. And then there's levels of certainty. So concerning for abuse, highly concerning for abuse. We also will diagnose unable to determine, which means we really can't tell. Either the child's statements are not as—as clear or consistent for us to make a diagnosis. And when I say 'us,' I mean Liberty House[1] and the medical examiners. And so, we can't determine if something has happened[.]"

Defendant later asked about whether generally "the most frequent scenario of fabrication is in a custody dispute[.]" (Defendant's theory in this case was that the sexual abuse allegations were fabricated as the result of a custody dispute between the victim's mother and defendant, who is the victim's father.) As a result of those questions, the state contended, and the court agreed, that defendant had opened the door to the expert's testimony "with regard to the [specific] conclusions drawn by Liberty House" and "the fact that a diagnosis was made[.]" On redirect examination, the state elicited testimony from the expert regarding the diagnosis of child sexual abuse.

The state notes that defendant "did not move to strike" any of the expert's testimony on cross-examination, did not object to the trial court's ruling that defendant had "opened the door" to admission of the specific conclusions that the expert had drawn about the victim in this case, and did not object when the state questioned the expert about the diagnosis.[2] Given all of the circumstances, the state contends that defendant was actively instrumental in bringing about any error and that we therefore should not exercise our discretion to correct it. *See Ailes*, 312 Or at 382 n 6 (In deciding whether to exercise its discretion to correct plain error, the court may consider, among other things "the competing interests of the parties; the nature of the case; the gravity of the

---

[1] Liberty House is a child abuse assessment center.

[2] Interestingly, before the trial court, defendant offered as evidence an assessment report from Liberty House that includes the sexual abuse diagnosis. Although the trial court allowed defendant to use the reports "for the purpose of impeaching someone as to a specific statement" or to "refresh someone's recollection," it concluded that they were hearsay and "could not come in in totality on their own." As one of his assignments of error on appeal, defendant contends that the trial court erred in excluding that report as hearsay.

error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case is another way[.]"). We agree with the state.

Here, the state did not have the expert testify on direct examination as to a diagnosis of child sexual abuse and alerted defendant and the court in advance that it did not intend to ask the expert about a diagnosis. Instead, the evidence was offered only as the result of defendant's trial tactics, which called into question the issue of whether Liberty House had been able to make a diagnosis of the victim. Where, as here, it was solely defendant's conduct at trial that led to the error in question, we cannot conclude that the policies requiring preservation have been served, or that correction of the error would serve the ends of justice. *See id.* at 382 n 6. Accordingly, this case is not like those cases in which we have concluded it was appropriate to exercise our discretion to correct trial court errors in admitting diagnoses like that at issue here. *See Clay,* 235 Or App at 30-31; *State v. Lovern,* 234 Or App 502, 512-14, 228 P3d 688 (2010); *State v. Merrimon,* 234 Or App 515, 520-22, 228 P3d 666 (2010). Instead, even assuming that the court committed error in admitting the evidence in question,[3] we decline to affirmatively exercise our discretion to correct the error.

Affirmed.

---

[3] Because we do not exercise our discretion to correct any error, we need not address whether the admission of the evidence was plain error in the circumstances presented here—particularly in light of the state's argument that defendant "opened the door" to the testimony. *Cf. State v. Miranda,* 309 Or 121, 128, 786 P2d 155 (1990) ("A defendant's own inquiry on direct examination into the contents of otherwise inadmissible statements opens the door to further inquiry on cross-examination relating to those same statements.").