No. 38                                                                  1

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*

*v.*

MATTHEW RYAN WILTSE,
*Petitioner on Review.*

(CC 20CR28544) (CA A175287) (SC S070253)

En Banc

On review from the Court of Appeals.*

Argued and submitted January 11, 2024.

Stacy M. Du Clos, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section.

Doug Petrina, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

DUNCAN, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

_____

* Appeal from Curry County Circuit Court, Cynthia L. Beaman, Judge. 325 Or App 527, 529 P3d 288 (2023).

**DUNCAN, J.**

In this criminal case, defendant appealed the trial court's judgment convicting him of third-degree assault under ORS 163.165(1)(a). Defendant asserted that the trial court had erred by giving a special jury instruction that the state had requested. Although defendant had not objected to the instruction in the trial court, he contended that the Court of Appeals could address the error because it constituted a "plain error." *See* ORAP 5.45(1) (providing that an appellate court "may, in its discretion, consider a plain error"). An error constitutes a plain error if (1) it is an error "of law"; (2) the legal point is "obvious, not reasonably in dispute"; and (3) the error appears on the record, meaning that the appellate court "must not need to go outside the record to identify the error or choose between competing inferences, and the facts constituting the error must be irrefutable." *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991) (citing *State v. Brown*, 310 Or 347, 355-56, 800 P2d 259 (1990)).

The special jury instruction at issue concerned the meaning of "serious physical injury," an element of third-degree assault under ORS 163.165(1)(a). "Serious physical injury" includes "protracted disfigurement." ORS 161.015(8) (defining "serious physical injury"). The special instruction provided, "A scar on the scalp, visible five months after the injury, qualifies as 'protracted disfigurement.'" Defendant argued in the Court of Appeals that the instruction was a comment on the evidence. Such comments are prohibited by ORCP 59 E, which applies to criminal trials by way of ORS 136.330(1). ORCP 59 E provides that a trial court "shall not instruct with respect to matters of fact, nor comment thereon." Construing that rule, this court has held that a trial court may not give "a jury instruction that tells the jury how specific evidence relates to a particular legal issue." *State v. Hayward*, 327 Or 397, 410-11, 963 P2d 667 (1998).

The Court of Appeals agreed with defendant that the "protracted disfigurement" instruction was a comment on the evidence and, as such, violated ORCP 59 E. *State v. Wiltse*, 325 Or App 527, 536, 529 P3d 288 (2023). But the court held that giving the instruction did not constitute a plain error. *Id.* at 536-37. According to the court, it was possible

that defendant had agreed to the instruction or had made a strategic choice not to object to it and, therefore, the alleged error did not satisfy the third plain error requirement: It did not appear on the record. *Id.* Thus, the court reasoned that, because it was possible that defendant had agreed to the instruction or had made a strategic choice not to object to the instruction, it could not tell whether the trial court had actually erred. The premise underlying that reasoning is that it is not error for a trial court to give an instruction that comments on the evidence if the parties agree to the instruction or make strategic choices not to object to it.

As we explain below, that premise is incorrect. Trial courts have certain duties when it comes to jury instructions. Under ORCP 59 B, a trial court has a duty to instruct the jury on all the law necessary to the jury's factual findings. Under ORCP 59 E, a trial court has a duty not to comment on the evidence. Those duties are imposed on courts themselves. They are not conditional or contingent; they do not depend on the actions of parties. Parties cannot authorize courts to violate those duties. Thus, whether a trial court erred by giving an instruction that violated those duties is something that can be determined based on the instruction itself. This court has so held repeatedly, including in *Brown* and *State v. Lotches*, 331 Or 455, 472, 17 P3d 1045 (2000), *cert den*, 534 US 833 (2001). For example, in *Lotches*, we determined whether the trial court's instructions violated ORCP 59 B based on the content of the instructions; we explained that we did not need to go outside the record or select among competing inferences because whether the instructions violated the rule could be "determined readily by examining the instructions that were given." *Id.*

Although *Brown* and *Lotches* involved ORCP 59 B and this case involves ORCP 59 E, the reasoning of those cases applies here: We can determine whether, in giving a jury instruction, a trial court violated its duties under ORCP 59 by examining the instruction itself. Therefore, we hold that the Court of Appeals erred in concluding that the trial court's instructional error did not appear on the record.

We emphasize, however, that our holding does not mean that defendant is entitled to a reversal. A plain error

is not necessarily a reversible error. As we will explain, whether a plain error is reversible can depend on considerations including, but not limited to, the considerations that this court identified in *Ailes*. To clarify that point, we apply the *Ailes* factors here. For the reasons explained below, we decline to exercise our discretion to reverse based on the instructional error.

## HISTORICAL AND PROCEDURAL FACTS

On the day of the incident that gave rise to this criminal case, defendant was sitting at a picnic table in front of a church, fashioning a handle for a knife. Across the street, RR and her boyfriend were arguing in a public park. They yelled and screamed at each other for half of an hour. Defendant ridiculed RR for her role in the argument. In response, RR drove her car across the street to confront defendant. She got out of her car and picked up a metal pole, which was more than five feet long. RR screamed at defendant, approached him while carrying the pole, and came within three feet of him. Exactly what happened next was disputed at trial, but RR was injured and taken to a hospital, where a doctor determined that RR had suffered the kind of injury that could cause brain damage and even death. The doctor ordered a CT scan, which showed that RR's eye socket had multiple fractures. The doctor also treated a two-centimeter-long laceration near RR's left eye that required two layers of sutures.

A grand jury indicted defendant with several crimes, including three alternative counts of assault: one first degree, one second degree, and one third degree. The charges alleged different culpable mental states and injuries. The first-degree count alleged that defendant had *intentionally* caused RR *serious physical injury* by means of a dangerous weapon, ORS 163.185(1)(a); the second-degree count alleged that he had *knowingly* caused RR *physical injury* by means of a dangerous weapon, ORS 163.175(1)(b); and the third-degree count alleged that he had *recklessly* caused RR *serious physical injury* by means of a dangerous weapon, ORS 163.165(1)(a).[1]

---

[1] Defendant was also charged with one count of unlawful possession of methamphetamine. He pleaded guilty to that charge and was sentenced to probation.

The case was tried to a jury. At trial, RR testified that she had approached defendant with the pole, which she intended to be "intimidating." She also testified that, when she saw the knife that defendant had in his hand, she "froze." The next thing RR remembered was being hit with the pole, falling to the ground in pain, and bleeding from an injury near her left eye. Defendant asserted that he had acted in self-defense. He testified that RR had been menacing him with the pole, so he took it from her and, in doing so, inadvertently injured her.

Prior to trial, the parties submitted proposed jury instructions. The state requested Uniform Criminal Jury Instruction 1044A, which defines "serious physical injury" as follows:

> "The term *serious physical injury* means a physical injury that (1) creates a substantial risk of death, (2) *causes serious and protracted disfigurement*, (3) causes protracted impairment of health, or (4) causes protracted loss or impairment of the function of any bodily organ."

(First emphasis in original; second emphasis added.) *See* ORS 161.015(8) (defining "serious physical injury"). The state also requested a special instruction, entitled "protracted disfigurement," which provided:

> "A scar on the scalp, visible five months after the injury, qualifies as 'protracted disfigurement.'"[2]

At the close of the evidence, the trial court had the parties come into chambers to "go over the jury instructions." The record does not reflect what occurred during that discussion. The discussion was not recorded and neither the court nor the parties summarized it when they returned to the courtroom.

Thereafter, the trial court instructed the jury on the record. The instructions included the uniform jury instruction on "serious physical injury," as well as the state's

---

[2] It appears that the state's special instruction regarding "protracted disfigurement" was based on *State v. Alvarez*, 240 Or App 167, 171, 246 P3d 26 (2010), *rev den*, 350 Or 408 (2011). In that case, the Court of Appeals affirmed the trial court's denial of the defendant's motion for a judgment of acquittal, "agree[ing] with the state that a scar on the scalp, visible five months after the injury, qualifies as a 'protracted disfigurement.'" *Id.* at 171.

special instruction on "protracted disfigurement." The court also instructed the jury, "When I tell you what the law is on a particular subject or tell you how to evaluate certain evidence, you must follow these instructions."

The record does not reflect that the trial court asked the parties for their positions on the instructions that it gave. Nor does it contain any agreement or objection to the instructions by either party.

During closing argument, the state argued that it had presented sufficient evidence to prove that RR had suffered "serious physical injury." The prosecutor contended, among other things, that RR's scar constituted "protracted disfigurement." In support of that contention, the prosecutor directed the jury's attention to the state's special instruction:

> "If you go to the top of the next page, protracted disfigurement, a scar on the scalp visible * * * five months after the injury qualifies as protracted disfigurement. So we have a scar that's visible on her scalp, on her face six months later, so that would count as protracted disfigurement."

The jury found defendant not guilty on the first-degree assault count, did not reach a verdict on the second-degree count, and found defendant guilty on the third-degree count for recklessly causing serious physical injury to RR by means of a dangerous weapon. The trial court entered a judgment convicting defendant of third-degree assault and sentencing him to 28 months in prison, to be followed by 24 months of post-prison supervision. At the state's request, the trial court dismissed the second-degree assault count.

Defendant appealed the trial court's judgment, assigning error to the trial court's giving of the state's special instruction regarding "protracted disfigurement." Defendant asserted that the instruction was a comment on the evidence, prohibited by ORCP 59 E. Defendant acknowledged that he had not objected to the instruction in the trial court and, therefore, his assignment of error was unpreserved. For that reason, defendant invoked the "plain error" doctrine, under which an appellate court can consider unpreserved errors in certain circumstances. *See Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008) (explaining

that the "principal exception" to the preservation require-
ment is for "plain error"); ORAP 5.45(1) (providing for "plain
error" review); *see also Ailes*, 312 Or at 381-82 (describing
approach for determining whether to remedy a plain error);
*Brown*, 310 Or at 355-56 (holding that incorrect jury instruc-
tion was a plain error and exercising discretion to remedy
the plain error).

The Court of Appeals first considered whether the
state's special instruction on "protracted disfigurement"
was a comment on the evidence and held that it was. *Wiltse*,
325 Or App at 534-35. The court explained:

> "Under ORCP 59 E, applicable to criminal cases under
> ORS 136.330, a trial court may not instruct the jury 'with
> respect to matters of fact, nor comment thereon.' A trial
> court impermissibly comments on the evidence 'when it
> gives a jury instruction that tells the jury how specific evi-
> dence relates to a particular legal issue.' *State v. Hayward*,
> 327 Or 397, 410-11, 963 P2d 667 (1998). *** [An] instruc-
> tion may not direct the jury to draw any particular infer-
> ence from a given factual finding, let alone instruct the
> jury that such evidence is dispositive of the element."

*Wiltse*, 325 Or App at 534. Applying that law, the court con-
cluded that,

> "[w]hen the trial court instructed the jury that, '[a] scar on
> the scalp visible five months after the injury qualifies as
> protracted disfigurement,' it impermissibly drew the jury's
> attention to the scar and the inference of protracted dis-
> figurement, essentially disposing of the state's burden to
> prove the serious physical injury element. In other words,
> it commented on the evidence."

*Id.* at 535 (second brackets in *Wiltse*). Although RR's scar
was located on her face and not her scalp, the Court of
Appeals concluded that "the jury likely thought that the ***
instruction was informing them that the scar in this case
constituted protracted disfigurement." *Id.* at 536. Therefore,
the court concluded, the instruction "impermissibly directed
the jury on the inference to be drawn." *Id.*

The Court of Appeals then considered whether the
instruction "qualified for plain-error review." *Id.* The court
observed that, "[t]o constitute error, an alleged error must

appear on the record, which means that the reviewing court must not need to go outside the record to identify the error or choose between competing inferences." *Id.* (internal quotation marks omitted). It then held that the alleged instructional error did not "appear on the record," explaining that "a conclusion that the trial court erred by [giving the protracted-disfigurement instruction] would require us to resolve competing inferences regarding what the parties discussed, and what agreement they may have reached, during the off-the-record discussions that led the trial court to instruct the jury without any objection from defendant." *Id.* (internal quotation marks omitted). Consequently, the court concluded that, "although the trial court's instruction was an impermissible comment on the evidence, the court did not plainly err in giving that instruction." *Id.* at 537.

Defendant petitioned for review of the Court of Appeals' decision, and we granted review of his petition to address that court's plain-error analysis.

## ANALYSIS

The issue on review is whether the Court of Appeals erred in holding that the trial court's comment on the evidence did not constitute a plain error. As just recounted, the Court of Appeals reasoned that the trial court's comment on the evidence did not satisfy the third plain-error requirement—*viz.*, that the error must "appear on the record"—because it was possible that defendant had agreed to the instruction or had made a strategic choice not to object to the instruction. *Wiltse*, 325 Or App at 536 (internal quotation marks omitted). As we understand it, the court's reasoning was based on the premise that, although ORCP 59 E explicitly prohibits a trial court from commenting on the evidence, it is not error for a trial court to give a jury instruction that comments on the evidence if the parties agreed to the instruction or made strategic choices not to object to the instruction. That premise is incorrect under our case law. As we explain below, in cases where a party has argued that a trial court erred by giving a jury instruction that violates the rules that govern jury instructions, this court has held that (1) whether the instruction violates those rules is a question of law that can be determined by examining

the instruction itself; and (2) if the instruction violates the rules, giving it was error and the error is apparent on the record.

Before turning to those cases, we begin with the principles of preservation and plain error review. "Generally, before an appellate court may address whether a trial court committed an error ***, the adversely affected party must have preserved the alleged error in the trial court and raised the issue on appeal by an assignment of error in its opening brief." *Ailes*, 312 Or at 380. But an appellate court may consider errors that were not properly preserved or raised if they constitute "plain error." *See Peeples*, 345 Or at 219 ("The principal exception to preservation requirements is for so-called 'plain error[.]'"); ORAP 5.45(1) (an appellate court "may, in its discretion, consider a plain error").

When determining whether to remedy an alleged plain error, appellate courts employ a two-step analysis. *Ailes*, 312 Or at 381-82. The first step is to determine if the error constitutes a plain error. *Id.* (citing *Brown*, 310 Or at 355-56). To constitute a plain error, an error must be (1) an error of law; (2) "obvious, not reasonably in dispute"; and (3) apparent on the record, meaning that the appellate court "must not need to go outside the record to identify the error or choose between competing inferences, and the facts constituting the error must be irrefutable." *Id.* (citing *Brown*, 310 Or at 355-56). Whether an error constitutes a plain error is a question of law, which this court reviews for errors of law. *State v. Gornick*, 340 Or 160, 167, 130 P3d 780 (2006) ("First, this court considers whether the Court of Appeals committed an error of law in determining that the three elements under the first step of the plain error analysis had been satisfied.").

If an error constitutes a plain error, then, at the second step of the plain-error analysis, an appellate court determines whether to exercise its discretion to reverse based on the error. *Ailes*, 312 Or at 382 (citing *Brown*, 310 Or at 355-56). In *Ailes*, this court set out a nonexclusive list of factors that a court may consider when determining whether to exercise its discretion to reverse based on a plain error:

> "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way, *i.e.*, whether the trial court was, in some manner, presented with both sides of the issue and given an opportunity to correct any error."

*Id.* at 382 n 6. Additional factors can include whether the party alleging a plain error encouraged the error or made a strategic choice not to object to it, *State v. Fults*, 343 Or 515, 523, 173 P3d 822 (2007),[3] and whether the opposing party played a role in causing the error, *State v. Chitwood*, 370 Or 305, 326-27, 518 P3d 903 (2022). When reviewing a Court of Appeals decision regarding whether to reverse based on a plain error, we apply an "abuse of discretion" standard of review. *Gornick*, 340 Or at 167.[4]

In this case, defendant assigned error to the trial court's giving of the state's requested jury instruction regarding "protracted disfigurement." As mentioned, trial courts have certain legal obligations when they give jury instructions. A trial court must "state to the jury all matters of law necessary for its information in giving its verdict." ORCP 59 B; ORS 136.330(1) (providing that ORCP 59 B applies in criminal trials); *Anderson v. N. P. L. Co.*, 21 Or 281, 288, 28 P 5 (1891) ("[I]t is the duty of the court to instruct the jury upon every point relevant to the issue[.]"); *see also Williams*

---

[3] Specifically, in *Fults*, we noted:

"[F]actors that may apply in this case are: (1) defendant's apparent encouragement of the judge's choice; (2) the role of the concurrent, permissible 36-month probationary sentence; (3) the possibility that defendant made a strategic choice not to object to the sentence; and (4) the interest of the judicial system in avoiding unnecessary repetitive sentencing proceedings, as well as its interest in requiring preservation of error."

343 Or at 523.

[4] We note that appellate courts are not required to proceed through the first step of the plain-error analysis before the second. Instead, they may resolve cases by stating that, even if the asserted error qualified as a plain error, they would not exercise their discretion to review it. *See, e.g., Gonzalez-Aguilera v. Premo*, 274 Or App 484, 491, 360 P3d 730 (2015), *rev den*, 358 Or 611 (2016) (even assuming that the trial court plainly erred, the court declined to exercise its discretion to correct any error); *State v. Digesti*, 267 Or App 516, 524, 340 P3d 762 (2014), *rev den*, 357 Or 111 (2015) (same); *State v. Martinez-Sanchez*, 244 Or App 87, 89, 260 P3d 599 (2011) (same).

*et al. v. Portland Gen. Elec.*, 195 Or 597, 608, 247 P2d 494 (1952) ("[T]he very purpose for which instructions are given to juries [is to] enlighten them and to give to them in clear, understandable, unambiguous language the legal principles which will guide them in their deliberations.").

At the same time, a trial court "shall not instruct with respect to matters of fact, nor comment thereon." ORCP 59 E; ORS 136.330(1) (providing that ORCP 59 E applies in criminal trials). The purpose of the rule prohibiting trial courts from commenting on the evidence is to protect the jury's role as the ultimate factfinder. *See* ORS 136.320 ("all questions of fact," except those that have been judicially noticed, "shall be decided by the jury"); *State v. Boots*, 315 Or 572, 592, 848 P2d 76, *cert den*, 510 US 1013 (1993) (holding that the "right to a trial by jury includes the right to a jury determination on every factual element essential to the crime charged"). The rule both reflects and protects the different roles of the court and the jury in trials. It is intended to preserve the impartiality of the court, the independence of the jury, and the integrity of the trial.

In cases like this one, where a party has argued that a trial court plainly erred by giving a jury instruction that failed to comply with the rules that govern jury instructions, this court has determined whether the court erred by examining the instruction itself. *Brown* is illustrative.

In *Brown*, the defendant was charged with aggravated murder under ORS 163.095(2)(a)(E) (1977), which defined aggravated murder to include the murder of a witness if the murder was "related to the performance of the victim's official duties in the justice system." 310 Or at 349. Under that statute, the state was required to prove a causal connection between the murder and the victim's status as a witness. *State v. Maney*, 297 Or 620, 623, 688 P2d 63 (1984) (so holding). The defendant and the state each submitted jury instructions setting out the elements of aggravated murder. *Brown*, 310 Or at 354. Although the parties' instructions differed in some respects, each required a causal connection between the murder and the victim's status as a witness. *Id.*

The trial court prepared its own instructions and reviewed them with the parties before closing arguments. *Id.* at 353-54. The court's aggravated murder instruction provided that the state had to prove that the defendant had "intentionally caused the death" of the victim and that the victim "was to be a witness in a criminal proceeding," but it did not provide that the state had to prove a causal connection between the murder and the victim's status as a witness. *Id.* The defendant did not object to the instruction. *Id.* at 354. After the court instructed the jury, the defendant excepted to the instruction, but only on the ground that there was insufficient evidence to support giving it; he did not except to it on the ground that it did not include the causation element. *Id.* at 355.

When the case was on review in this court, the defendant did not assign error to the instruction. *Id.* But, demonstrating "the highest ethical standards of our profession," the state pointed out that the instruction failed to include the causation element. *Id.*

This court explained that, ordinarily, to obtain appellate relief based on the giving of an erroneous jury instruction, a party must have excepted to the instruction in the trial court and assigned error to it in the appellate court. *Id.* But, we further explained, under ORAP 5.45(2) (1990), the court could consider plain errors. *Id.* At the time, ORAP 5.45(2) provided that "the appellate court may consider errors of law apparent on the face of the record."[5] Based on the text of ORAP 5.45(2) (1990), we held that, to qualify as an "error[] of law apparent on the face of the record," (1) an error must be "of law"; (2) the error must be "apparent," that is, "the legal point is obvious, not reasonably in

_____

[5] In 2017, ORAP 5.45 was amended to its current form, and the plain-error review provisions are now in ORAP 5.45(1), which provides that "the appellate court may, in its discretion, consider a plain error." In keeping with *Brown* and its progeny, including *Ailes*, a footnote to ORAP 5.45(1) provides:

"For an error to be plain error, it must be an error of law, obvious and not reasonably in dispute, and apparent on the record without requiring the court to choose among competing inferences; in determining whether to exercise its discretion to consider an error that qualifies as a plain error, the court takes into account a non-exclusive list of factors, including the interests of the parties, the nature of the case, the gravity of the error, and the ends of justice in the particular case."

dispute"; and (3) the error must appear "on the face of the record." *Brown*, 310 Or at 355. Applying those requirements, this court held that the trial court's instruction, which omitted the causation element, constituted an "error[] of law apparent on the face of the record." *Id.*

First, this court held that the error was an error of law because a trial court has a legal duty to instruct the jury on all the law necessary for its verdict, and whether a trial court has performed that duty is a question of law. *Id.* We explained that ORCP 59 B provides that, "[i]n charging the jury, the court shall state to them all matters of law necessary for their information in giving their verdict." *Id.* (quoting ORCP 59 B (1982)). We held that, in omitting the required causal connection when it instructed the jury, the trial court had failed to instruct the jury as required by ORCP 59 B and, thereby, had committed legal error. *Id.*

Second, this court held that the error was "obvious." *Id.* We based that holding on our determination that it was "not reasonably in dispute" that a court generally must instruct on all the elements of a charged crime. *Id.*

Third, and finally, this court held that the error appeared "on the face of the record." *Id.* We explained that we did not need to "go outside the record or choose between competing inferences to find it" and that "the facts that comprise the error are irrefutable." *Id.* Thus, we were able to determine whether the trial court's instruction violated ORCP 59 B based on the instruction itself.

After determining that the error qualified as a plain error, we considered whether to exercise our discretion to reverse the defendant's aggravated murder conviction based on the error. *Id.* at 355-56. In doing so, we noted, among other things, the effect that the error could have had on the verdict, the consequences of the verdict for the defendant, and the extent to which the purposes of the preservation requirement were served. *Id.* Based on those case-specific considerations, we chose to reverse the defendant's conviction and remand the case to the trial court for further proceedings. *Id.* at 356, 375.

In sum, in *Brown*, this court determined that whether the trial court's aggravated murder instruction complied with the law was a question of law that could be determined based on the instruction itself. *Id.* at 355. Notably, in *Brown*, the parties and the trial court had reviewed the court's instructions before the court gave them to the jury, and the defendant had not objected to the aggravated murder instruction on the ground that it did not include the causation element. But, on review, we did not consider those facts when determining whether the error qualified as a plain error. Instead, we considered matters related to fairness and efficiency, which the preservation requirement is intended to protect, when determining whether to exercise our discretion to reverse based on the plain error.[6]

*Brown* was consistent with precedent. In *Kuhnhausen v. Stadelman*, 174 Or 290, 148 P2d 239, *reh'g den*, 174 Or 314, 149 P2d 168 (1944), this court held that a jury instruction that misstated the law constituted an error "appearing on the face of the record," and, therefore, we could "take notice of" it, even though the defendant had not objected to it. *Id.* at 311 (applying the predecessor to ORAP 5.45(2) (1990), Rule of Procedure No. 2 ("Errors Considered") (1941) (stating that "this court reserves the right to take notice of an error of law apparent on the face of the record," even if the appellant does not present the assignment of error)). We then considered several factors relevant to whether the error "should be noticed," and concluded that it should. *Id.*

*Brown* has been followed in other cases, including *Lotches*, an aggravated murder case. In *Lotches*, one of the issues on review was whether the trial court had plainly erred by failing to instruct the jury in a manner that would ensure that the jurors unanimously agreed that the state had proved the aggravating factors it had alleged, as required by *Boots*. *Lotches*, 331 Or at 468-69 ("[T]he unanimity rule requires that the jury agree as to just what defendant did to bring himself within the purview of the particular subsection of the aggravated murder statute under which he was charged." (Internal quotation marks omitted.)); *State v.*

---

[6] We followed that two-step process in *Ailes*. 312 Or at 381-82 (describing process for plain-error review).

*Boots*, 308 Or 371, 377, 780 P2d 725 (1989) (holding that, to convict a defendant of aggravated murder, "the jury must unanimously agree" on the aggravating factor).

To resolve that issue, this court first determined that the three aggravated murder instructions were erroneous. *Lotches,* 331 Or at 466. We explained that, although the aggravated murder counts were based on underlying felonies, the instructions did not identify "the victim or attendant circumstances applicable to each of those underlying felonies or in any other way ensure jury unanimity concerning those issues." *Id.* We further explained that, "because the aggravated murder instructions that were given did not either limit the jury's consideration to a specified underlying felony or require jury unanimity concerning a choice among alternative felonies, each instruction carried the same danger that this court had condemned in *Boots.*" *Id.* at 469. We acknowledged that *Boots* was "distinguishable factually" because, in *Boots*, the trial court had expressly instructed the jurors that they did not have to unanimously agree on the aggravating factors, but we held that there was "no reasonable basis for refusing to apply the rule of *Boots* to the present case." *Id.*

After determining that the instructions were erroneous, we considered whether there was "a substantial likelihood of jury confusion as to the underlying felony that was applicable to each count." *Id.* at 470-71. We concluded that, for two of the instructions, there was such a likelihood. *Id.* at 471.

We then turned to the question of whether those two instructions qualified as plain errors. *Id.* at 472. To do so, we followed *Brown* and applied the elements of plain error. *Lotches*, 331 Or at 472 (citing *Brown*, 310 Or at 355). We held that the errors were "errors of law" because "the question of what must be included in a jury instruction is a question of law." *Id.* We further held that the errors were "obvious" because, under *Boots*, it was "clear *** that a jury must be instructed concerning the necessity of agreement on all material elements of a charge in order to convict," and, therefore, the trial court should have known what its "duties respecting jury instructions" were. *Id.* And, of

particular relevance here, we held that we could identify the instructional errors without having to go outside the record or select among competing inferences because "what was or was not included is determined readily *by examining the instructions that were given.*" *Id.* (emphasis added). Thus, we concluded that the instructions constituted plain errors. *Id.* Then, because there was a substantial likelihood that the instructions had caused jury confusion, we exercised our discretion to reverse the defendant's convictions based on those instructions. *Id.* at 471-72.

Since *Lotches*, this court has continued to hold, at the first step of the plain-error analysis, that jury instructions that do not comply with the law constitute plain errors. *See, e.g.*, *State v. McKinney/Shiffer*, 369 Or 325, 333-34, 505 P3d 946 (2022) (holding, in consolidated cases, that trial courts' failures to instruct on a required mental state element constituted plain errors because they were errors of law, not reasonably in dispute, and apparent on the record); *State v. Vanornum*, 354 Or 614, 629-30, 317 P3d 889 (2013) (holding that an instruction that misstated the law regarding self-defense was an error apparent on the record); *State v. Hale*, 335 Or 612, 629-30, 75 P3d 448 (2003), *cert den*, 541 US 942 (2004) (following *Lotches* and holding that a trial court's failure to instruct a jury in a manner that ensured juror unanimity constituted a plain error).[7]

The reasoning underlying *Brown*, *Lotches*, and our other plain-error jury-instruction cases is sound. Whether a jury instruction fails to comply with the law can be determined by looking at the instruction itself. As discussed, under ORCP 59, a trial court has legal obligations regarding jury instructions, and whether a court has complied with those obligations does not depend on the actions of

---

[7] The Court of Appeals has also held that incorrect instructions are errors that appear on the record. *See, e.g.*, *State v. Hooper*, 310 Or App 715, 718, 487 P3d 428 (2021) (holding that, based on *Lotches*, the instructional error was one of law and appeared on the record); *State v. Gregg*, 310 Or App 513, 516, 484 P3d 1120, *rev den*, 368 Or 514 (2021) (holding that the trial court plainly erred when it gave the jury a nonunanimous verdict instruction, in part because "the instructional error is apparent on the record"); *State v. Gaines*, 275 Or App 736, 738, 365 P3d 1103 (2015) (relying on *Lotches* and holding that the trial court's failure to give a jury concurrence instruction was plain error); *State v. Gray*, 261 Or App 121, 130, 322 P3d 1094 (2014) (holding that a jury instruction incorrectly stated the law because it omitted elements of the charged crime and that the error was plain).

the parties. Parties cannot authorize trial courts to breach those obligations.

ORCP 59 E's prohibition against comments on the evidence protects the jury's role as the factfinder, and parties cannot agree to allow a trial court to interfere with that role.[8] Thus, if a trial court gives a jury instruction that violates ORCP 59 E, the trial court has erred and the error is apparent on the record. Whether the parties agreed to the instruction or made strategic choices not to object to it does not alter the fact that, by giving the instruction, the trial court violated its independent duty under ORCP 59 E. (But those possibilities *can* affect whether an appellate court exercises its discretion to remedy an error.)

Applying our precedent to this case, we first turn to the question of whether the trial court erred in giving the state's requested "protracted disfigurement" instruction. The Court of Appeals held that it did, and we agree. As discussed, ORCP 59 E prohibits trial courts from commenting on evidence, and one of the purposes of that rule is to protect the jury's role as the ultimate factfinder. When a defendant has entered a not guilty plea, the defendant has denied committing the charged crime and the state bears the burden of proving all the elements of the crime beyond a reasonable doubt. ORS 135.370 (a not guilty plea "controverts and is a denial of every material allegation in the accusatory instrument"); *State v. Cunningham*, 173 Or 25, 40, 144 P2d 303 (1943) ("The plea of not guilty imposed upon the state the burden of proving every element of the crime of murder."). It is the jury's role to determine whether the state has carried that burden; the jury must find the facts that establish the elements of the crime. *Boots*, 315 Or at 592.

A trial court cannot intrude on the jury's role by commenting on the evidence in violation of ORCP 59 E. As

---

[8] ORCP 59 E's prohibition against comments on the evidence is akin to other prohibitions that help protect the jury's role as the factfinder. For example, this court has held that parties cannot stipulate to the admission of polygraph evidence, and one of our reasons for so holding is that the evidence could interfere with the jury's role. *State v. Lyon*, 304 Or 221, 233, 744 P2d 231 (1987) (citing *State v. Brown*, 297 Or 404, 440-41, 687 P2d 751 (1984)). Admission of such evidence could impair "the integrity of the trial process" and "the traditional role of the jury," and "parties cannot by private agreement 'waive' these vital institutional concerns." *Id.*

this court observed in *Hayward*, a trial court violates ORCP 59 E "when it gives a jury instruction that tells the jury how specific evidence relates to a particular legal issue." 327 Or at 410-11; *see also State v. Tucker*, 315 Or 321, 333, 845 P2d 904 (1993) (affirming trial court's denial of the defendant's requested instructions regarding specific factors that it should consider in mitigation of his sentence on the ground that the instructions were comments on the evidence, prohibited by ORCP 59 E). Such comments are prohibited, "even in the absence of rebutting evidence." *State v. Rainey*, 298 Or 459, 465, 693 P2d 635 (1985). Here, as the Court of Appeals correctly explained, the state's requested "protracted disfigurement" instruction conveyed to the jury that specific evidence in the case established an element of the charged offense. *Wiltse*, 325 Or App at 535-36. Thus, the instruction violated ORCP 59 E.

The question then becomes whether giving the instruction qualifies as a plain error. As discussed, the Court of Appeals held that it did not because it did not "appear on the record." *Id.* at 536-37 (internal quotation marks omitted). The court reasoned that, because it was possible that defendant might have agreed to the instruction off the record, it could not tell whether giving the instruction was an error at all. *Id.* We disagree. As *Brown*, *Lotches*, and the other cases discussed above show, an appellate court can determine whether a jury instruction violates the rules that govern jury instructions based on the content of the instruction itself.

Taking that approach, and mirroring *Lotches*, we hold that giving the "protracted disfigurement" instruction was an error of law because the question of whether an instruction violates ORCP 59 E is a question of law. *See Lotches*, 331 at 472 (holding that jury instructions that violated ORCP 59 B constituted "errors of law" because "the question of what must be included in a jury instruction is a question of law"). We further hold that the error is "obvious" because it is clear that a court is prohibited from commenting on evidence, ORCP 59 E, and that a court violates that prohibition "when it gives a jury instruction that tells the jury how specific evidence relates to a particular legal

issue." *Hayward*, 327 Or at 410-11; *see Lotches*, 331 Or at 472 (holding that erroneous instructions were "obvious" under case law). And, finally, we hold that the error can be identified without having to go outside the record or select among competing inferences because the content of the instruction is set out in the record. *See Lotches*, 331 Or at 472 (holding that erroneous instructions could be identified without having to go outside the record or select among competing inferences because "what was or was not included is determined readily by examining the instructions that were given").[9] Therefore, we conclude that the trial court's instruction, which violated ORCP 59 E, is apparent on the record.

In arguing otherwise, the state relies on *Gornick* and *State v. Perez*, 340 Or 310, 317-18, 131 P3d 168 (2006). In each of those cases, the trial court imposed sentences based on aggravating facts that the court found itself. Each defendant's sentencing hearing occurred before the Supreme Court's decision in *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004), in which the Court held that a judge exceeds their "'proper authority' by inflicting additional punishment based upon facts that the jury did not find beyond a reasonable doubt and that defendant did not admit." *Gornick*, 340 Or at 167 (quoting *Blakely*, 542 US at 303-04). Based on *Blakely*, the defendants in *Gornick* and *Perez* argued that their trial courts had plainly erred by finding the aggravating facts themselves. This court rejected those arguments.

In *Gornick*, this court explained that a trial court does not legally err by finding aggravating facts during sentencing if the defendant chose not to exercise their right to have a jury find the aggravating facts. 340 Or at 168.

---

[9] We note that this case does not involve a stipulation, which is a party's waiver of the right to require the other party to prove a particular fact. *See State v. Harris*, 339 Or 157, 173, 118 P3d 236 (2005) (explaining that such a waiver must show "an intentional relinquishment or abandonment of a known right or privilege" (internal quotation marks omitted)). Defendant did not stipulate to the "serious physical injury" element. *See State v. Hess*, 342 Or 647, 651, 159 P3d 309 (2007) (a judicial admission allows a person to enter a "formal waiver of proof that relieves an opposing party from having to prove the admitted fact and bars the party who made the admission from disputing it" (internal quotation marks omitted)); *Johnson v. Northwest Acceptance*, 259 Or 1, 7, 485 P2d 12 (1971) (a stipulation requires a clear and intentional waiver of a right). Defendant pleaded not guilty to the charges, and all the elements of the charges were submitted to the jury.

The court stated that the "mere fact that a judge, rather than a jury, decides the facts * * * does not demonstrate that any error occurred." *Id.* Thus, because the record did not show that the defendant took issue with the trial court's factfinding and instead "sat by quietly and made no other objections"—and, in fact, parts of the record (including the defendant's guilty plea) *did* show that the defendant understood that the trial court would engage in factfinding—the court determined that the defendant "could have chosen to have the trial court, rather than a jury, find the aggravating facts." *Id.* at 169. Given that possibility, and given that "a trial court does not commit legal error by finding aggravating facts if the defendant chooses not to exercise his rights under *Blakely*," *id.* at 168, the court determined that the record did not clearly show that the trial court erred and that the claimed error was thus not "on the * * * record," *id.* at 170.

Similarly, in *Perez*, the defendant did not object when the trial court found several aggravating facts and imposed a departure sentence based on those facts. Prior to the trial court engaging in its factfinding, the defendant had signed a jury waiver form stating that he "elects to waive trial by jury and consents to be tried by a [j]udge"; he also signed a form stating that he "fully understand[s] that the actual sentence is up to the court." 340 Or at 317. As in *Gornick*, the court determined that the defendant could have chosen to have the trial court, instead of a jury, find the aggravating facts, in which case the trial court would not have legally erred. *Id.* at 318. The court concluded that that inference was one of "several competing inferences," so the record did not clearly show that the trial court erred and, therefore, the defendant's plain-error claim failed at the first step of the *Ailes* analysis. *Id.*

*Gornick* and *Perez* dealt with different types of alleged errors than the instructional error at issue here. In each of those cases, the defendants could have taken steps to authorize the trial court's actions: they could have agreed to have the trial court find the aggravating facts. (And, in both cases, there is evidence suggesting that the defendants understood that the trial court would be the entity making

factual findings.) But, for the reasons explained above, as both we and the Court of Appeals have held in plain-error jury-instruction cases, a party's agreement to a jury instruction, or choice not to object to an instruction, does not affect whether an instructional error violates the rules that govern jury instructions. If an instruction violates those rules, it is error to give it, and it satisfies the third plain error requirement: it is apparent on the record.

Because, in this case, the record shows the trial court gave an instruction that violated ORCP 59, we conclude, contrary to the Court of Appeals, that the erroneous instruction appears on the record and constitutes a plain error. As should be clear, that conclusion concerns only the first step of the *Ailes* plain-error analysis: the determination of whether an error constitutes a plain error.

Although the Court of Appeals did not reach the second step of the *Ailes* analysis, we proceed to that step in the interest of providing an example of how the two steps work together.

Whether an appellate court should exercise its discretion to reverse based upon a plain error is a case-specific determination. We cannot anticipate all the facts that could be relevant to that determination in every case. But we can reiterate some general principles regarding preservation and plain error.

There are strong reasons for the preservation requirement. Among other things, it promotes fairness and judicial economy. *State v. Parkins*, 346 Or 333, 340-41, 211 P3d 262 (2009). It helps ensure that "parties are not taken by surprise, misled, or denied opportunities to meet an argument." *Davis v. O'Brien*, 320 Or 729, 737, 891 P2d 1307 (1995). It also helps ensure that a court has a "chance to consider and rule on a contention, thereby possibly avoiding an error altogether or correcting one already made." *Peeples*, 345 Or at 219. Consequently, "[a] court's decision to recognize unpreserved or unraised error *** should be made with utmost caution. Such an action is contrary to the strong policies requiring preservation and raising of error." *Ailes*, 312 Or at 382.

As set out above, in *Ailes*, this court identified some factors that appellate courts may consider when deciding whether to exercise their discretion to reverse a plain error:

> "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way, *i.e.*, whether the trial court was, in some manner, presented with both sides of the issue and given an opportunity to correct any error."

312 Or at 382 n 6. Courts may also consider whether the party alleging the plain error encouraged the error or made a strategic choice not to object to it. *Fults*, 343 Or at 523; *State ex rel Juv. Dept. v. S.P.*, 346 Or 592, 606, 215 P3d 847 (2009) (stating that whether a party "encouraged commission of the error in question or made a strategic choice not to object" are relevant to whether this court will "exercise its discretion" to reverse an asserted plain error); *see, e.g.*, *State v. Serrano*, 355 Or 172, 188, 324 P3d 1274 (2014), *cert den*, 576 US 1037 (2015) (assuming that, by giving certain jury instructions, the trial court committed plain error, but declining to reverse because the defendant had made "an explicit decision to endorse" the instructions).[10]

Here, the gravity of the error, in the context of the case, weighs against reversal. Although the error concerns a jury instruction, the instruction related to an issue that defendant did not actively dispute: whether RR's injuries constituted one form of "serious physical injury," specifically, "protracted disfigurement." As mentioned, defendant's defense was that RR approached him with the pole, he grabbed it in self-defense, and he inadvertently injured RR. Defendant did not dispute the nature of RR's injuries. That is understandable, given defendant's defense and the undisputed evidence, which included a doctor's testimony that RR had suffered a type of injury that was potentially

---

[10] As the list of non-exclusive factors set out in *Ailes* suggests, there are a variety of factors that an appellate court may consider when deciding whether to exercise its discretion to reverse based on a plain error. But a court is not required to address every factor in every case. In some cases, for example, one factor may be a sufficient reason for a court to decline to exercise its discretion.

life threatening, her eye socket had been fractured in multiple places, and she had a two-centimeter laceration near her left eye that required two layers of sutures.

To be sure, the state should not have requested the erroneous instruction and the trial court should not have given it. And, if defendant had objected to it and the court had overruled his objection, we might conclude that the error was not harmless and reverse on the ground that the instruction could have affected the jury's verdict. But whether an error was not harmless (and therefore reversible if there was an objection) is a different question from whether an error was grave (which we consider when determining whether to reverse when there was not an objection). *State v. Ortiz*, 372 Or 658, 678, 554 P3d 796 (2024) (so explaining). Here, because the erroneous instruction concerned an undisputed factual issue that did not affect defendant's self-defense claim, we conclude that giving the instruction was not a grave error.

Relatedly, an evaluation of the competing interests of the parties weighs against reversal. Defendant had a full opportunity to try the issues in the case and he chose a self-defense theory that was largely successful. As recounted above, the state charged defendant with three alternative counts of assault, and the jury found defendant guilty of the least serious count, third-degree assault, for recklessly causing serious physical injury. Again, defendant did not dispute the nature of RR's injuries. If we were to reverse, the state might have to retry the case and, if so, the defendant might raise a new defense, gaining a second bite at the proverbial apple.

In addition, this is not a case where the purposes of preservation were otherwise served. The parties submitted their jury instructions to the court before trial, as required by ORCP 59 A. Defendant had the opportunity to review the state's instructions. In addition, the trial court discussed the instructions with counsel. Thus, defendant had notice of the requested instruction and an opportunity to object to it. But, as far as the record reveals, defendant did not object to the instruction. If he had, it is possible that the state and court would have realized that the instruction was erroneous.

But, even if they did not, the state could have withdrawn the instruction or the court could have opted not to give the instruction rather than risk an error. Thus, this is a case where, had defendant objected to the erroneous instruction, the error could have been readily avoided or corrected.

In light of those *Ailes* factors—the gravity of the error in the context of the case, the parties' competing interests, and whether the purposes of preservation were otherwise served—we decline to exercise our discretion to reverse based on the instructional error.

Before closing, we highlight what today's decision means for trial lawyers and trial judges. Trial lawyers should understand that they should continue to object to any jury instruction that they think is objectionable for any reason. Counsel should not read today's opinion as creating a tactical advantage of silence. Absent an objection, an instructional error is unlikely to be the basis for a reversal in most cases. Trial judges—who often work to finalize jury instructions in a short time frame at the close of trial—should understand that, in most circumstances, giving jury instructions that have been jointly requested or requested by one party without objection is unlikely to lead to reversal on plain-error review. However, we note that all discussion of instructions is best accomplished on the record, so that appellate courts will know whether an instruction resulted from a joint proposal, an unobjected to request of one party, or was given over a party's objection. *See State v. Lutz*, 306 Or 499, 503, 760 P2d 249 (1988) ("[N]othing of importance bearing on the conduct of the trial should be 'off the record.'")

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.