No. 23 June 24, 2025 739

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Petitioner on Review,*

*v.*

ANTHONY ALAN WORSHAM
*Respondent on Review.*

(CC 21CR46056) (CA A178554) (SC S071176)

En Banc

On review from the Court of Appeals.*

Argued and submitted February 27, 2025.

Patricia G. Rincon, Assistant Attorney General, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs were Ellen Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Stacy M. Du Clos, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause and filed the brief for respondent on review. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section.

JAMES, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

_____
    * Appeal from Douglas County Circuit Court, Ann Marie Simmons, Judge. 332 Or App 154, 548 P3d 849 (2024)

**JAMES, J.**

In this criminal case, we consider whether a trial court commits plain error by failing to give a supplemental instruction that no party had requested, in order to clarify a term in a uniform jury instruction given, to which no party had objected. Here, statements by the prosecutor in closing argument attempted to define for the jury—incorrectly—a term appearing in a uniform instruction. Had defendant objected, it would have been appropriate for the trial court to strike those statements, and permissible for the court to give a curative instruction to the jury to disregard the prosecutor's argument, or to give a supplemental instruction to clarify the law. On appeal, the Court of Appeals reversed, holding that the trial court's failure to give a supplemental instruction had amounted to error apparent on the record under the first prong of this court's decision in *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991). *State v. Worsham*, 332 Or App 154, 548 P3d 849 (2024). We now reverse the Court of Appeals. As we explain, a trial court's failure to give an unrequested custom supplemental instruction, where the instructions given were legally correct, does not constitute plain error under the first prong of *Ailes*.

## BACKGROUND

This case arose out of allegations of a stabbing. The state charged defendant with one count of first-degree assault, ORS 163.185, and one count of unlawful use of a weapon, ORS 166.220. The issue at trial centered on whether defendant had acted in self-defense, as provided under ORS 161.209. However, self-defense can be limited by the provisions of ORS 161.215, specifically, as pertinent to this case, ORS 161.215(1)(b), which states that a person is not justified in using physical force upon another person "if * * * [t]he person is the initial aggressor." Below, the state argued that defendant had been the initial aggressor.

The state requested, and the trial court instructed the jury with, Uniform Criminal Jury Instruction (UCrJI) 1110, as follows:

"Defense—Use of Physical Force in Defense of Person—Aggression.

"Ordinarily a person is not justified in using physical force on another person if he was the *initial aggressor*. However, the Defendant's use of physical force may be justified even when he was the aggressor if you find that he withdrew from the encounter and effectively communicated to the other person an intent to withdraw from the encounter but the other person nevertheless continued or threatened to continue the use of unlawful physical force upon the Defendant."

(Emphasis added.) Defendant did not object to the court giving UCrJI 1110. And, while UCrJI 1110 does not define "initial aggressor," no party requested a supplemental instruction defining the term.

In closing argument, the state attempted to clarify the boundaries of what could make someone an initial aggressor:

"[PROSECUTOR]:   Maybe, maybe, maybe, maybe yelling stop beating a woman with an open knife and, and following for, following them for two minutes doesn't provoke him. Okay. *** Well, then you have to look who is the initial aggressor. And it doesn't have to be one or the other but who is the initial aggressor in this, right? And look in here. *It doesn't say physically aggressive. It's aggressor. It's open. It's open to your determination.*"

(Emphasis added.)

And on rebuttal, the state returned to the notion of what defined being an initial aggressor:

"[PROSECUTOR]:   And again, the talk about provocation. You have to look at the circumstances. Okay. And *** again, think about it ***. There are situations where you could walk up to [someone] and say something in a certain manner and it might not be provocation or you may not be the initial aggressor. *But you're walking up to someone yelling in their face stop beating on women. In this *** situation one thing is gonna happen.*

"*****

"And everyone in this courtroom knows it, including [defendant]. But he did that. He walked into that.  He created the situation. *** "[Defendant] is in control of the situation. He's the one who is monitoring it. He's the one who's on the

outside looking in, right. Of course, he's gonna blend those lines to make it look as close as possible as 'I couldn't *** really do anything.' *** *He has a duty, injecting himself, not to provoke or be the initial aggressor, which he clearly does."*

(Emphasis added.)

Defendant did not object to the state's closing, nor did defendant, after hearing the closing, request a supplemental instruction defining "initial aggressor." The jury convicted defendant, and he appealed.

On appeal, defendant asserted that the trial court had erred in failing to *sua sponte* define "initial aggressor" for the jury. The Court of Appeals agreed, holding that the trial court's duty to correctly instruct the jury extends to "important terms of art used in the elements of the crime." *Worsham*, 332 Or App at 162. The Court of Appeals then noted that "[a]ny doubt about the need to instruct the jury on the meaning of 'initial aggressor' ceased to exist during closing arguments." *Id*. at 163. The Court of Appeals concluded that the trial court's failure to define initial aggressor amounted to error apparent on the record, as required under the first prong of *Ailes*, 312 Or at 382. The Court of Appeals then exercised its discretion to correct the error and reversed the judgment of the trial court. The state petitioned for review, which we allowed.

## ANALYSIS

In *Ailes*, 312 Or at 382, we set out a two-prong inquiry for plain error. Under the first prong, we held that the error must be one of law; it must be apparent, with the legal point obvious and not reasonably in dispute; it must appear on the record, requiring no need to go "outside the record to identify the error or choose between competing inferences; and the facts constituting the error must be irrefutable." 310 Or at 355-56. If that first prong is met, then the appellate court has "discretion to consider or not to consider the error, and if the court chooses to consider the error, the court must articulate its reasons for doing so." *Id*. As explained, the issue before us in this case is whether the trial court's giving of UCrJI 1110—without further instructing the jury on "initial aggressor"—qualifies as plain error under the first

prong of *Ailes*. As we will explain, we conclude that, on this record, the trial court did not commit plain error. However, before we turn to that explanation, we think it valuable to pause and discuss what crystalized the issue in this case: the state's closing argument.

The prosecutor's argument—that the term "initial aggressor" "*doesn't say physically aggressive[;] [i]t's aggressor[;] \*\*\* [i]t's open to your determination*"—in the context of the evidence presented in defendant's trial, attempted to convey to the jury the idea that one could be an initial aggressor through words alone. That is incorrect as a matter of law. *See Penn v. Henderson*, 174 Or 1, 14, 146 P2d 760 (1944) ("[P]rovocation by mere words, if unaccompanied by any overt act of hostility, will not justify an assault."). But, more fundamentally, the prosecutor's argument was improper in that it sought to instruct the jury on the law in a way that differed from the trial court's instruction under UCrJI 1110. Specifically, the argument sought to define a term that the trial court had not defined.

Attorneys are afforded considerable freedom to argue their case. And closing argument may reasonably employ time-worn techniques of persuasion and rhetoric. But there are limits to what attorneys may say in closing argument, and if there were any doubt, we say it now with clarity: Only the court should instruct the jury on the law.[1] Attorneys are free to argue how the facts in their case do—or do not—meet the standard of the law, but, in doing so, attorneys should be careful not cross the line from argument to instructing the jury differently from how the court has instructed the jury. If a term in a court's instruction needs further definition, that clarification should occur via discussion amongst the court and counsel resulting in a supplemental instruction, not for the first time through argument. Accordingly, attorneys should be mindful of the risks of using argument to recast the instructions given—whether by rephrasing them, using synonyms, or colloquializing them.

---

[1] There are, of course, other ways that closing argument can be improper, some of which are discussed in *State v. Burton*, ___ Or ___, ___ P3d ___ (2025), decided today.

When argument strays into improper instruction, opposing counsel may object. And, when such improper argument is objected to, a trial court should, at a minimum, strike the statement and remind the jury that only the court—not attorneys—can properly, *and accurately*, instruct the jury on the law. Other remedies, too, may be appropriately considered at the trial court's discretion, including admonition of the attorney and the need for a supplemental instruction clarifying the misperception of the law caused by the improper closing argument. In the most egregious cases, when an attorney's closing argument attempts to instruct the jury on the law in a way that renders the trial fundamentally unfair in a way that cannot be cured by further court instruction, mistrial may be required. *See, e.g.*, *State v. Chitwood*, 370 Or 305, 308-09, 518 P3d 903 (2022) (holding that a defendant's right to a fundamentally fair trial was violated by the prosecutor using closing argument to define "moral certainty" as "if you determine that [defendant] should not reside with an adolescent girl, that's your moral certainty and I have proven my case beyond a reasonable doubt").[2]

Turning to the merits, ORCP 59 B provides that, "[i]n charging the jury, the court shall state to the jury all matters of law necessary for its information in giving its verdict." *See* ORS 136.330(1) (making ORCP 59 B applicable to criminal trials). Generally, a trial court has an obligation in a criminal case to instruct on all the elements of the

---

[2] Because proper closing argument is bounded, in part, by the instructions given, attorneys are well-served by working with opposing counsel and the court to finalize jury instructions *early* in the trial process, well in advance of the day of closing arguments. In civil cases, ORCP 59 A requires that, "[u]nless otherwise requested by the trial judge on timely notice to counsel, proposed instructions shall be submitted at the commencement of the trial." The legislature, through ORS 136.330, has made parts of ORCP 59 applicable to criminal cases, but not ORCP 59 A. As a result, we observe that it is not uncommon for Oregon trial judges presiding over criminal trials to receive proposed jury instructions late in the trial, sometimes on the eve of instructing the jury. It is not unheard of for judges presiding over criminal trials to be finalizing instructions while the parties are giving their closing arguments. Whether ORCP 59 A should apply to criminal trials may be worth the legislature's consideration.

We also note that, while ORCP 58 B(8) permits the court to "instruct the jury before or after closing arguments," instruction before closing may better position the court and counsel to identify when closing arguments are diverging from the instructions given.

offense. *See State v. Brown*, 310 Or 347, 354-56, 800 P2d 259 (1990) (explaining that when instructing the jury on the elements of aggravated murder of a witness, the trial court was required to instruct the jury on the "a causal link between the murder and the victim's status as a witness").

Claims of error regarding jury instructions can be broken into two categories: (1) that the trial court erred in giving an instruction, or (2) that the trial court erred in failing to give an instruction. Under the first category, as we recently explained in *State v. Wiltse*, 373 Or 1, 19-20, 559 P3d 380 (2024), when a trial court gives a legally incorrect instruction, that constitutes an "obvious" error of law, not reasonably in dispute, and apparent on the record, satisfying the first prong of *Ailes*, 312 Or 376. *See also State v. McKinney/Shiffer*, 369 Or 325, 334, 505 P3d 946 (2022) (concluding that the trial court plainly erred in giving instruction that incorrectly failed to inform the jury that assault required the defendant to have at least a criminally negligent mental state with regard to the injury that her conduct caused).

The error in this case is not in that first category, *i.e.*, it is not an error in giving an incorrect instruction. Again, UCrJI 1110 provides:

> "Defense—Use of Physical Force in Defense of Person—Aggression.

> "Ordinarily a person is not justified in using physical force on another person if he was the initial aggressor. However, the Defendant's use of physical force may be justified even when he was the aggressor if you find that he withdrew from the encounter and effectively communicated to the other person an intent to withdraw from the encounter but the other person nevertheless continued or threatened to continue the use of unlawful physical force upon the Defendant."

The Court of Appeals reasoned that a trial court's duty to instruct on the law "extends to important terms of art used in the elements of the crime." *Worsham*, 332 Or App at 162. For the Court of Appeals, because "initial aggressor" had been defined in caselaw narrower than common usage,

UCrJI 1110 was flawed in its failure to provide that legal definition.

We agree that a court's duty to instruct may extend to terms of art, but with important limitations. When a term within a uniform instruction is clearly flawed, such that a lack of further definition renders the uniform instruction *itself* an incorrect statement of the law, then a trial court would commit plain error under the first prong of *Ailes* in giving the instruction. *See Wiltse*, 373 Or at 19-20 (holding that it was plain error for the trial court to give an instruction that was a comment on the evidence). But, where a custom supplemental instruction would simply improve a legally correct uniform instruction, not fix a fatal defect, a trial court does not err in giving the uniform instruction.[3]

UCrJI 1110 states that "[o]rdinarily a person is not justified in using physical force on another person if he was the initial aggressor." That is a correct statement of the law. While various decisions over the years have held that the term "initial aggressor" may be contextually narrower than common usage—and thus UCrJI 1110 might arguably be improved by defining the term—that instruction is not fatally flawed, such that the giving of UCrJI 1110 is itself error. We have cautioned that "because many appellate opinions are written with no view that they will be turned into instructions, care must be exercised in using the language of these opinions for instructions to juries." *Rogers v. Meridian Park Hospital*, 307 Or 612, 616, 772 P2d 929 (1989). Not every appellate refinement of a term's meaning necessitates that trial courts must, *sua sponte*, scour the uniform instructions for language that could be improved. As we have observed, "[t]he ultimate purpose of instructions is not that they may stand up under calm analysis in the quietude of the losing attorney's law office, but that they convey the needed information to the juror [who] sits and listens in the box." *Silfast v. Matheny*, 171 Or 1, 9-10, 136 P2d 260 (1943). UCrJI 1110 meets that standard, because it correctly instructed the

---

[3] We note that some uniform instructions are written in the alternative, with different word choices available to the court. We do not foreclose the possibility that, in a specific case, the giving of one version of a uniform instruction, as opposed to other alternatives proposed by the uniform instruction itself, could render the instruction given an incorrect statement of the law.

jury on the "initial aggressor" exception to the justified use of force. ORS 161.215. Accordingly, by giving UCrJI 1110, the trial court did not instruct the jury erroneously, as was the case in *Wiltse*, 373 Or at 19-20.

If the trial court erred here, it was error of the second category—error in failing to give an instruction. Generally, parties are entitled to have a supplemental instruction given when the existing instructions, read as a whole, do not fully cover a necessary legal point, *Hernandez v. Barbo Machinery Co.*, 327 Or 99, 106, 957 P2d 147 (1998), and when the requested supplemental instruction is legally correct in all respects and supported by the evidence, *State v. McBride*, 287 Or 315, 319, 599 P2d 449 (1979); *see also State v. Nefstad*, 309 Or 523, 542, 789 P2d 1326 (1990) (concluding that trial court properly refused proffered instruction because it was "not correct").

Instructions *ungiven* present a challenge under plain error review, because plain error requires a showing of legal error appearing on "the record." *Ailes*, 312 Or at 382. In the preserved error context, establishing legal error for failing to give a requested instruction turns, in part, on showing that the ungiven instruction was "legally correct in all respects." *McBride*, 287 Or at 319. Plain error review cannot demand any less. When the ungiven instruction is a custom supplemental instruction, as opposed to another uniform instruction, and no actual custom supplemental instruction was requested at trial, the accuracy and completeness of that theoretical instruction cannot appear on "the record," and the theoretical instruction cannot be assessed as to whether it is "legally correct in all respects." *Ailes*, 312 Or at 382; *McBride*, 287 Or at 319. As such, it is generally impossible for a trial court's failure to give an *unrequested* custom supplemental instruction to qualify as plain error.

That is the problem here. If the trial court erred, it was in failing to give a custom supplemental instruction to UCrJI 1110. But because none was requested, defendant cannot establish that the ungiven supplemental instruction was correct in all respects. That precludes defendant from establishing error apparent on the record, and for this

reason, the trial court did not commit plain error under *Ailes*, 312 Or at 382.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.